Filed 10/1/13  In re M.G. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.G., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E057625 |
| Plaintiff and Respondent, | (Super.Ct.No. INJ1200493) |
| v. | OPINION |
| R.G., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Lawrence P. Best, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Pamela Rae Tripp, under appointment by the Court of Appeal, for Defendant and Appellant.

Pamela J. Walls, County Counsel, and Anna M. Deckert, Deputy County Counsel, for Plaintiff and Respondent.

1

Defendant and appellant R.G. (Father) appeals from the juvenile court's jurisdictional and dispositional findings as to his six-year-old son M.G. He contends that (1) there was insufficient evidence to support the court's order sustaining the petition as to him under Welfare and Institutions Code section 300, subdivision (b); and (2) the court erred in removing M.G. from his custody. We reject these contentions and affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

The family came to the attention of Riverside County Department of Public Social Services (DPSS) in September 2012 after an immediate response referral was received alleging physical abuse of M.G. and his younger half brother H.R. by H.L. (Mother) and her boyfriend C.R.[1] M.G. reported that Mother and C.R. made him lie on his stomach while they hit him with a belt, leaving bruises. M.G. also stated that his half brother had also been hit with a belt. M.G. described an incident where he was forced to lay face-down on a bed with his wrists and ankles tied to the four corners of the bed so C.R. could hit him with a belt. M.G. suffered a rope burn as a result of the incident. The children were taken into protective custody and placed in a suitable foster home.

Mother and C.R. admitted that they had disciplined M.G. by hitting him with a belt, and that at times they had assisted each other by holding the child down. They also admitted to past incidents of corporal punishment on the children that had left marks and

---

[1] Neither Mother nor H.R. are parties to this appeal.

bruises on them, including an incident where C.R. had repeatedly hit H.R., who was four months old at the time, because he would not stop crying. Mother also explained that they had made efforts to conceal the marks from relatives. C.R. denied tying M.G. to a bed and explained that it had been fabricated by the maternal grandmother because she did not like him. Mother also denied the tying incident, claiming M.G.'s account of the incident was "'far-fetched.'" Mother and C.R. also admitted to incidents of domestic violence.

M.G. also reported that he had been sexually abused by his cousin during the prior summer while at his paternal grandmother's residence. Father reported that there were normally many relatives in the paternal grandmother's home, but denied knowledge of any harm to M.G. while in his care.

Father explained that he had obtained joint custody of M.G., and that he was supposed to get M.G. for summers, weekends, and holidays. However, he had lost contact with Mother and M.G. when they moved to another residence. Father also explained that he had concerns about M.G.'s safety and was told of an incident where M.G. had bruises on his back caused by C.R. and that Mother had not allowed M.G. visits with the paternal relatives in an effort to hide the abuse. Father stated that he had not seen the bruises but had spoken to Mother about it. Mother confirmed that M.G. had bruises on him caused by C.R. and stated that she was leaving C.R. to live in another state. Father later learned that Mother had reconciled with C.R. When questioned why he did not seek a court order to change his visitations after learning of the abuse and Mother reconciling with C.R., Father explained that he had heard "rumors" that Mother

3

was back together with C.R., but he did not have confirmation. This was about the same time when he was again incarcerated and, therefore, unavailable to protect M.G.

While incarcerated, Father stated that he had attempted to write letters to M.G., but he could not locate him. Father was released from jail in April 2012. He had not visited M.G. in approximately 10 months, reportedly because he was not allowed to leave his San Diego community. He explained that he was released early from jail on the condition that he would reside in a "men's work furlough program," and he would only leave to go to work. Father acknowledged that M.G. had visited the paternal grandmother and explained that she could not bring M.G. to him "as his schedule was too demanding for a visit."

Father also reported that he had a history of gang affiliation and abusing marijuana and methamphetamine. He denied any knowledge of why child protective services (CPS) was involved with him as a minor. According to the CPS database, Father was listed as the substantiated perpetrator of sexual abuse when he was about 15 years old against his 10- and 12-year-old sisters. The reports of sexual abuse occurred over "'20 times'" and included vaginal, oral, and anal intercourse. Father was arrested and his siblings were removed by CPS. Father admitted going to juvenile hall, but initially denied sexually abusing his sisters. The paternal grandmother explained that Father had remained out of the home for about one year and returned to live with his siblings; Father however claimed that he had resided with an aunt and uncle until he turned 18 years old. Father also had a lengthy criminal history as an adult, including charges or convictions for

attempted murder, assault with a deadly weapon, drug possession, transporting illegal immigrants, and driving under the influence.

Father was residing in a one-bedroom apartment in San Diego, was on both Imperial County and Federal probation until 2014, and was employed full time as an assistant cook and worked long hours. He was married, had a two-year-old child with his current wife, and desired to have M.G. reside with him, with his wife providing daycare while he worked.[2] Father's wife reported that she previously had children removed from her care and failed to reunify with them. She also explained that she was criminally charged due to bite marks found on her children and was on formal probation until the end of 2013. She denied inflicting any harm or injury to her children, but admitted biting her children because of past abusive relationships. Father's wife also admitted to having a lengthy criminal history, including charges or convictions for child abuse, assault with a deadly weapon, and multiple thefts. Mother did not want M.G. placed with Father, noting that when she returned to pick up M.G. from an extended visit with Father, she could not locate Father. She believed Father was incarcerated and had left the child with relatives.

On September 18, 2012, a petition was filed on behalf of the children pursuant to Welfare and Institutions Code[3] section 300, subdivisions (a) (serious physical harm),

---

[2] Father also had an eight-year-old son who resided with the child's Mother.

[3] All future statutory references are to the Welfare and Institutions Code unless otherwise stated.

5

(b) (failure to protect), and (d) (sexual abuse). In regards to Father, the petition alleged that Father had a criminal history, including a conviction for assault with a deadly weapon in 2011, for which he was on formal probation, and a 2007 federal conviction for transporting illegal immigrants; that Father had knowledge of M.G. being physically abused and failed to intervene to protect M.G.; and that Father was not a member of the household and had failed to provide M.G. with adequate food, clothing, shelter, medical treatment, and/or protection.

At the September 19, 2012 detention hearing, Father requested a contested hearing and the matter was continued to September 24. Father, however, failed to appear at the September 24 contested detention hearing and the children were formally removed from their parents and placed in a foster home.

The social worker recommended that the allegations in the petition be found true, that the children be declared dependents of the court and removed from parental custody, and that the parents be offered reunification services.

The contested jurisdictional/dispositional hearing was held on November 16, 2012. Mother and Father were present. Mother waived her rights and submitted to the allegations in the petition based on the social workers' reports. Following testimony from the social workers and argument from counsel, the juvenile court found the allegations in the petition true and declared the children dependents of the court. The court also removed the children from parental custody. In regard to Father, the court found clear and convincing evidence that placement of M.G. in Father's care would be detrimental to the safety and physical or emotional well-being of the child. The parents

6

were offered reunification services and ordered to participate in their court-approved case plans.  This appeal followed.

II

DISCUSSION

Father challenges the jurisdictional findings and dispositional orders, arguing that there is insufficient evidence to support the juvenile court's jurisdiction under subdivision (b) of section 300 and the removal order as to him.  As explained *post*, we conclude that his challenges fail because there is overwhelming evidence of the allegations against Mother to establish the court's jurisdiction, and the record otherwise discloses adequate support for the dispositional orders regarding Father.

A.  *Jurisdiction*

The petitioner in a dependency proceeding must prove by a preponderance of evidence that the child who is the subject of the petition comes under the juvenile court's jurisdiction.  (*In re Shelley J.* (1998) 68 Cal.App.4th 322, 329, superseded by statute on other grounds as stated in *In re Christopher C.* (2010) 182 Cal.App.4th 73, 82.)  We review jurisdictional findings under the substantial evidence standard.  (*In re E.B.* (2010) 184 Cal.App.4th 568, 574; *In re A.S.* (2011) 202 Cal.App.4th 237, 244.)  Under this standard, we determine whether there is any substantial evidence, contradicted or uncontradicted, which supports the conclusion of the trier of fact.  (*In re Tracy Z.* (1987) 195 Cal.App.3d 107, 113.)  All evidentiary conflicts are resolved in favor of the respondent, and where more than one inference can reasonably be deduced from the

7

facts, we cannot substitute our own deductions for those of the trier of fact. (*In re John V.* (1992) 5 Cal.App.4th 1201, 1212.)

We begin with Father's contention that the juvenile court lacked jurisdiction over M.G. because there was insufficient evidence to support the jurisdictional findings as to him.

Generally, to acquire jurisdiction under subdivision (b) of section 300, the juvenile court was obliged to find that the child "has suffered, or there is a substantial risk that [he] will suffer, serious physical harm or illness, as a result" of specified forms of parental neglect, including substance abuse, physical abuse, and failure to protect the child. Here, the juvenile court made findings against Father, Mother and C.R., namely, that the children were placed at a substantial risk of harm by Mother and C.R.'s physical abuse of M.G. and his half brother, Mother and C.R.'s substance abuse and domestic violence, and Father's failure to protect M.G. from C.R. and Mother. Father argues that there was insufficient evidence to support the findings against him. For the reasons explained *post*, Father's attack on the juvenile court's jurisdiction fails in view of substantial evidence of the allegations against Mother and her boyfriend C.R. Indeed, Mother and C.R. admitted the allegations against them.

To secure jurisdiction over the child under section 300, the juvenile court was not obliged to make jurisdictional findings against both Father and Mother. Because the focus of the statutory scheme governing dependency is the protection of children, a "minor is a dependent if the actions of *either parent* bring [him] within one of the statutory definitions of a dependent." (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397,

8

italics added.) The agency "is not required to prove two petitions, one against the mother and one against the father, in order for the court to properly sustain a petition [pursuant to § 300] or adjudicate a dependency." (*In re La Shonda B.* (1979) 95 Cal.App.3d 593, 599.) "A petition is brought on behalf of the child, not to punish the parents. [Citation.] The interests of both parent and child are protected by the two-step process of a dependency proceeding, with its separate adjudication and disposition hearings. Thus, when [the department] makes a prima facie case under section 300 by proving the jurisdictional facts at the adjudication hearing, it is not improper for the court to sustain the petition; not until the disposition hearing does the court determine whether the minor should be adjudged a dependent." (*Ibid.*; see also *In re X.S.* (2010) 190 Cal.App.4th 1154, 1161.)

Here, Father does not challenge the jurisdictional findings based on Mother's conduct, and there is more than substantial evidence to support jurisdiction of M.G. based on Mother's conduct alone. Accordingly, because father does not challenge the sufficiency of the evidence to support the jurisdictional allegations as to Mother, the juvenile court properly exercised jurisdiction over the child even if Father's conduct was not an independent basis for jurisdiction. (See, e.g., *In re Maria R.* (2010) 185 Cal.App.4th 48, 60, disapproved on another ground in *In re I.J.* (2013) 56 Cal.4th 766, 780-781; *In re Jeffrey P.* (1990) 218 Cal.App.3d 1548, 1553-1554; *In re John S.* (2001) 88 Cal.App.4th 1140, 1143.)

Father acknowledges that jurisdiction over a child is established if the conduct of *either* parent places the child at risk under the criteria of section 300. He essentially

argues we should nonetheless reach the issue because the finding affected the disposition order with respect to Father.

A similar argument was rejected by the court in *In re I.A.* (2011) 201 Cal.App.4th 1484. In that case, the jurisdictional allegations included mother's drug abuse, domestic violence between the parents, and the parents' criminal histories. (*Id.* at p. 1488.) The father there also challenged the jurisdictional findings based on his conduct, but not the findings based on the mother's conduct. The court dismissed the appeal as moot because the father's "contentions, even if accepted, would not justify a reversal of the court's" jurisdiction. (*Id.* at pp. 1487-1488.) The court explained: "[I]t is necessary only for the court to find that one parent's conduct has created circumstances triggering section 300 for the court to assert jurisdiction over the child. [Citations.] Once the child is found to be endangered in the manner described by one of the subdivisions of section 300—e.g., a risk of serious physical harm (subds. (a) & (b)), serious emotional damage (subd. (c)), sexual or other abuse (subds. (d) & (e)), or abandonment (subd. (g)), among others—the child comes within the court's jurisdiction, even if the child was not in the physical custody of one or both parents at the time the jurisdictional events occurred. [Citation.] For jurisdictional purposes, it is irrelevant which parent created those circumstances." (*Id.* at pp. 1491-1492.)

As DPSS established jurisdiction based on C.R.'s and Mother's physical abuse, substance abuse, and neglect of M.G. and his half brother, the juvenile court properly found that M.G. came within the jurisdiction of section 300, subdivision (b). (*In re I.A.*, *supra*, 201 Cal.App.4th at pp. 1491-1492.) We therefore find no threatened prejudice to

Father from this jurisdictional finding, and reject Father's challenge to the juvenile court's jurisdiction. (*Id*. at p. 1495.)

B. *Dispositional Orders*

Father also contends the order removing M.G. from his custody was not supported by substantial evidence. He specifically argues that because he was a noncustodial, nonoffending parent who requested custody of M.G., the court should have placed M.G. with him because he was "presumptively entitled to custody." (*In re Catherine H.* (2002) 102 Cal.App.4th 1284, 1292.)

After ordering jurisdiction over M.G., the juvenile court made disposition orders, which included removal of M.G. and his half brother from their parents' custody and continued placement together in a foster home. The court found that section 361.2 applied to Father, and found that placement of M.G. with Father would be detrimental to the safety, protection, and physical and emotional well-being of the child.

The juvenile court "has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order" accordingly. (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006.) Among the permissible dispositional choices is removing the child from the parent's physical custody. (§ 361, subd. (c).) Generally, when a child has been removed from the physical custody of his or her parents, the statutory scheme governing dependency proceedings obliges the juvenile court to place the child "in a safe home or setting, free from abuse or neglect." (*In re Adrianna P.* (2008) 166 Cal.App.4th 44, 55.) The child's placement is subject to several provisions of the statutory scheme, including section 361.2. (*In re Adrianna P.*, at p. 55.)

11

Section 361.2 governs placement in a specific set of circumstances, namely, when the child has been removed from the home of a "custodial parent"—that is, a parent who had physical custody of the child—but has a "noncustodial parent," that is, "a parent with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300." (*In re Adrianna P.*, *supra*, 166 Cal.App.4th at p. 55 & fns. 5, 6, italics omitted; see also § 361.2, subd. (a).) Under subdivision (a) of section 361.2, when the noncustodial parent requests custody, the juvenile court must place the child with the noncustodial parent unless the placement would be detrimental to the child's safety, protection, or physical or emotional well-being. This finding also must be made by clear and convincing evidence. (*In re A.A.* (2012) 203 Cal.App.4th 597, 605; *In re Isayah C.* (2004) 118 Cal.App.4th 684, 694.)

The legislative preference is for placement with the nonoffending, noncustodial parent. (*In re John M.* (2006) 141 Cal.App.4th 1564, 1569; *In re Austin P.* (2004) 118 Cal.App.4th 1124, 1132.) Section 361.2 gives "temporary physical custody" to the nonoffending noncustodial parent "if doing so will not be detrimental to the child, but [] the court may not terminate jurisdiction until it analyzes whether ongoing supervision of the child is necessary." (*In re Austin P.*, at p. 1129.)

"We review the record in the light most favorable to the court's order to determine whether there is substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that [] the child[] would suffer such detriment [under section 361.2, subdivision (a)]. [Citations.]" (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1426; see also *In re Isayah C.*, *supra*, 118 Cal.App.4th at p. 694.) Substantial

12

evidence is evidence that is reasonable, credible and of solid value, such that a reasonable trier of fact could make such findings. (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 199.) The focus is on the best interest of the child, not on the conduct of the parent: "although a jurisdictional finding is predicated on parental conduct, a detriment finding for purposes of deciding placement with a noncustodial, nonoffending parent need not be." (*In re Luke M.* at p. 1425.)

Here, there was substantial evidence that placing M.G. with Father would be detrimental to M.G.'s safety, protection, or physical or emotional well-being. (§ 361.2, subd. (a).) M.G. had never lived with Father and Father had never acted in a capacity of a primary caregiver. Father essentially had no relationship with M.G. He had not maintained continual contact with M.G., and indeed lost all contact with M.G. once he was incarcerated in 2011. Additionally, once he was released from incarceration in April 2012, Father took no efforts to find or protect M.G., even though he knew Mother's boyfriend C.R. was abusing his child and had heard rumors that Mother had reconciled with C.R. He had not visited M.G. in approximately 10 months after his release from incarceration, reportedly because he was not allowed to leave his San Diego community. He however acknowledged that M.G. had visited the paternal grandmother and explained that she could not bring M.G. to him "as his schedule was too demanding for a visit."

Moreover, M.G. was not familiar with Father's home or current family. Father had planned on having his wife be M.G.'s primary caretaker while he worked long hours as an assistant cook. However, Father's wife reported that she had physically abused two of her children and had failed to reunify with them. Mother also expressed concern about

placing M.G. with Father under such circumstances, noting that on a prior occasion when she had returned to pick up M.G. from an extended visit with Father, she could not locate Father.  Furthermore, M.G. and his half brother had always been together.  Under the circumstances of this case, there was sufficient evidence to support a finding of detriment.

We conclude there was substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that M.G. would suffer detriment at the disposition stage if he was placed with Father without having had any opportunity to establish a relationship with Father and his current family.  (*In re Luke M.*, *supra*, 107 Cal.App.4th at p. 1426.)

### III

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ                        
                                        P. J.

We concur:

McKINSTER                    
                        J.

RICHLI                          
                        J.

14