Filed 8/24/15  In re Nehemiah R. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SEVEN

| | |
|---|---|
| In re NEHEMIAH R. et al., Persons Coming Under the Juvenile Court Law. | B259196 (Los Angeles County Super. Ct. No. DK02484) |
| DEPARTMENT OF CHILDREN AND FAMILY SERVICES, LOS ANGELES COUNTY, Plaintiff and Respondent, v. GILBERTO L. et al., Defendants and Appellants. | |

APPEALS from orders of the Superior Court of Los Angeles County, Marguerite Downing, Judge.  Affirmed in part, vacated in part, and remanded.

Megan Turkat Schirn, under appointment of the Court of Appeal, for Defendant and Appellant Father Gilberto L.

Merrill Lee Toole, under appointment of the Court of Appeal, for Defendant and Appellant Mother S. G.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

# INTRODUCTION

Parents S.G. and Gilberto L. separately appeal the juvenile court's disposition orders in the dependency proceedings concerning their children, Luna L. and Nehemiah R. Gilberto argues that, because Luna lived with him throughout the dependency proceedings without incident or risk of harm, the juvenile court at the disposition hearing should have terminated jurisdiction and awarded him custody of Luna, rather than continuing jurisdiction with an order requiring Gilberto to participate in counseling and live with his parents. Gilberto also argues that the evidence does not support the services the court ordered for him or the conditions the court imposed on placement with him. S.G. similarly argues that the juvenile court erred by requiring her to participate in drug treatment, testing, and aftercare because there was insufficient evidence that she abused drugs. Finally, S.G. argues that the family law exit order with respect to Nehemiah improperly intrudes on the family court's discretion to modify the order. We vacate the juvenile court's exit order, and otherwise affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Family*

S.G. has two children, Nehemiah R. (born in 2007) and Luna L. (born in 2013). Gilberto L. is Luna's father and V.R. (who is not a party to this appeal) is Nehemiah's father from a prior relationship with S.G. At the time of the filing of the original dependency petition in November 2013, S.G. and Gilberto had been in a relationship for about a year and a half and lived together with Luna and Nehemiah.

S.G. and Gilberto both have criminal records with a number of arrests and convictions. S.G.'s criminal history includes several felony theft and fraud convictions and a 2002 arrest for possession of a controlled substance. Gilberto's criminal history includes a number of felony convictions for crimes related to identity theft, forgery, and grand theft.

2

The Los Angeles County Department of Children and Family Services first became aware of the family in March 2011, when it received a report that S.G. was using drugs at home in Nehemiah's presence. S.G. denied she was using drugs and at the time showed no signs of substance abuse or mental health issues. Several months later, in August 2011, the Department investigated a report of physical abuse of Nehemiah by S.G. The Department closed both investigations after concluding that the allegations were unfounded. In March 2013 the Department investigated and closed as inconclusive a report that S.G. struck Nehemiah.

B.    *The Current Investigation*

On November 12, 2013 the Department received a report that S.G. and Gilberto brought Nehemiah to the hospital, claiming that the child was hallucinating, hearing voices, and acting aggressively. According to Gilberto and V.R., S.G. was hallucinating, talking to herself, and speaking to "demons" while she was at the hospital.

About a week later, the Department received a second referral regarding domestic violence between S.G. and Gilberto. The couple argued because Gilberto believed that S.G. was stealing money from him. Both Luna and Nehemiah were in the home at the time. The verbal altercation continued into the early morning hours and became physical when S.G. struck Gilberto with a chair. Ultimately, Gilberto asked S.G. to leave the family home, which she did, taking Nehemiah with her. At the time of the incident, Gilberto stated that he might seek a restraining order against S.G. and sole custody of Luna. When interviewed by a social worker at the Department, S.G. denied the argument became physical. She said she packed her belongings and left with Nehemiah at 3:00 a.m. because Gilberto told her to leave and he did not allow her to take Luna.

The social worker asked S.G. about her mental health. S.G. claimed she had never been diagnosed with a mental health disorder, but said she felt depressed. She also reported that she had received two to three months of counseling earlier in the year. S.G. denied a history of drug or alcohol abuse. Although she was coherent and did not appear

3

under the influence of drugs or alcohol, the social worker reported that S.G. was emotionally unstable and had cried several times during the interview. When asked about Nehemiah's health, S.G. reported that, although the child had been diagnosed with "psychosis" and prescribed psychotropic medication, she had not obtained the medication for him. She reported that he was receiving mental health services because he had stabbed three classmates with a paper clip, and had previously harmed animals.

In a separate interview, the maternal grandfather told the social worker he was concerned about S.G.'s mental and emotional state. He said that S.G. frequently yelled and screamed, and that when S.G. was in a rage he or the maternal grandmother would take Nehemiah to another part of the home.

The Department also interviewed Nehemiah. He said he felt safe at home, but also reported that Gilberto and S.G. argued. He said that he was in bed during the chair incident, and could not sleep because S.G. and Gilberto were fighting.

When the Department interviewed Gilberto, he said S.G. "snaps" and yells and curses at him in front of the children. He believed S.G.'s episodes of behavior had escalated in the weeks before the incident of domestic violence. He reported that recently he had returned home from work to find S.G. sitting outside of the house while the children were left unattended inside. With respect to the chair incident, Gilberto said that the verbal altercation had escalated to a physical altercation when S.G. picked up a chair and hit him with it. Gilberto showed the social worker the damaged chair. He also said that he had called police on at least one other occasion when S.G. was belligerent.

Gilberto denied he had any past or current issues with substance abuse, mental health, or domestic violence. He said he wanted to maintain a relationship with S.G. The next day, Gilberto called the social worker to report that S.G. had been hospitalized on a 72-hour psychiatric hold. Apparently, S.G. had called Gilberto and asked that he take her to the emergency room. When he arrived to pick her up, she became aggressive towards him so he called the police.

4

C.    *The Dependency Petitions*

On November 22, 2013 the juvenile court detained the children from S.G. and placed them with their respective fathers. The Department subsequently filed a petition under Welfare and Institutions Code[1] section 300 alleging that the children were at risk due to violent altercations between S.G. and Gilberto, a separate altercation between S.G. and V.R., and S.G.'s mental and emotional problems. At the detention hearing, the juvenile court found that Gilberto was Luna's presumed father and that V.R. was Nehemiah's presumed father. The court detained the children from S.G. and released them to their respective fathers with monitored visits for S.G.

The Department interviewed the family for the jurisdiction report. Nehemiah denied witnessing any incidents of domestic violence between S.G. and Gilberto. Nehemiah said he wanted to stay with his father V.R. and to visit with his mother, but that he wanted no contact with Gilberto. V.R. said Nehemiah was attending and doing well in therapy sessions, and was not displaying the symptoms he had while living with S.G. and Gilberto. V.R. also told the Department that S.G. had a history of using methamphetamine. He stated that when he met her in 2004 she was not abusing drugs, but that he had heard that she had started using them again in 2010.

S.G. denied throwing a chair at Gilberto. S.G. said that in November 2013 she had been diagnosed with severe depression, but she denied having hallucinations. She claimed that a former husband had abused her and raped her repeatedly, and thus she believed she had Post Traumatic Stress Disorder. She also denied that she had used methamphetamine or any other drug and she refused to discuss substance abuse issues.

When interviewed for the jurisdiction report, Gilberto denied there was any physical violence during his altercation with S.G. He claimed that he had asked S.G. to leave after they had a disagreement, and that a chair accidently broke as S.G. left. He said

---

[1]    All undesignated statutory references are to the Welfare and Institutions Code.

5

that his prior arguments with S.G. were not fights. He denied that S.G. had a history of using methamphetamine or other drugs.

The Department recommended that the juvenile court terminate jurisdiction over Nehemiah with a family law order granting V.R. sole custody. With respect to Luna, the Department recommended that the juvenile court place Luna with Gilberto with family maintenance services and order reunification services for S.G. The Department also recommended that Gilberto participate in parenting classes and counseling and that S.G. participate in parenting classes, counseling, domestic violence classes, mental health services, and a substance abuse treatment program with random drug testing.

V.R. reported that, while the family was at the juvenile court in late January 2014, Gilberto had threatened V.R. in front of Nehemiah. The Department reported that in February 2014 Gilberto refused to discuss the case with the Department's investigator. Neither Gilberto nor S.G. attended the court-ordered mediation.

On March 11, 2014 the Department received a report from the Los Angeles Police Department that Gilberto had come to a police station alleging falsification of records and some kind of conspiracy. Gilberto stated that S.G. was somehow involved in the murder of actress Natalie Wood, and that he had a briefcase full of documents he wanted the police to photocopy. Gilberto believed the Department was harassing him and keeping him under surveillance.

When the Department contacted Gilberto, he claimed that the National Security Administration and V.R. had him under surveillance, and that the dependency investigator was not a genuine social worker. Gilberto stated that S.G.'s biological parents had adopted her illegally and were involved in the Natalie Wood murder cover-up, and that S.G.'s biological father was actor Christopher Walken but that the Department or the hospital had changed S.G.'s last name. He also said he planned to change the locks on the family home. The Department expressed concerns about Gilberto's mental health and recommended a psychological examination. Gilberto lived with his parents at the time

6

and on March 12, 2014 the social worker attempted to make an unannounced visit to the home, but Gilberto refused to allow the social worker inside to see Luna.

In a subsequent conversation, the social worker asked Gilberto if he was willing to complete an on-demand drug test. Gilberto said he was unwilling to do so unless he could have a hard copy of the drug test results. The social worker explained he could not receive a hard copy, but the social worker could tell him the results. The social worker also asked him to submit to a mental health evaluation.

Meanwhile, in late January 2014, the Department filed a first amended petition adding an allegation that the children were at risk because of S.G.'s substance abuse. On March 17, 2014 the Department filed a second amended petition adding the allegation that Luna was at risk because of Gilberto's mental and emotional problems and his substance abuse.

D.      *The Jurisdiction Hearing and Follow Up*

On April 22, 2014 the juvenile court held the jurisdiction hearing. The juvenile court sustained the section 300 petition as follows:

a-1, b-2:  "The children Nehemiah [R.] and Luna [L.]'s mother, [S.G.] and the mother's male companion, Gilberto [L.], father of the child Luna, have a history of engaging in violent altercations in the children's presence. On 11/18/13, the mother threw a chair and struck [L.'s] father, while the children were present in the home. Such violent conduct on the part of the mother against [L.'s] father endangers the children's physical health and safety, placing the children at risk of physical harm, damage and danger."

b-1:  "The children Nehemiah [R.] and Luna [L.]'s mother, [S.G.], has mental and emotional problems, including a diagnosis of Post Traumatic [Stress] Syndrome, auditory hallucinations and delusional behavior, which renders the mother unable to provide regular care and supervision of the children. On 11/20/13, the mother was involuntarily hospitalized for the evaluation and treatment of the mother's psychiatric condition. Such

7

mental and emotional condition on the part of the mother endangers the children's physical health and safety and places the children at risk of physical harm and damage."

b-5: "The child Luna's father, Gilberto [L.], has mental and emotional problems, including auditory hallucinations and delusional behavior, which renders the father unable to provide regular care and supervision of the child. Such mental and emotional condition on the part of the father endangers the child[ ]'s physical health and safety and places the child at risk of physical harm and damage."

The juvenile court dismissed the allegations of domestic violence between S.G. and V.R., the substance abuse allegations concerning S.G. and Gilberto, and the allegation of emotional abuse of Nehemiah. The juvenile court ordered both S.G. and Gilberto to participate in drug testing. The court also reminded Gilberto that it might change the placement order if he failed to cooperate with the Department. The court kept Nehemiah placed with V.R., and ordered a psychological evaluation of Gilberto pursuant to Evidence Code section 730.

In June 2014 S.G. told the social worker she was participating in a domestic violence support group, parenting classes, and individual counseling at the Be Well Now Institute. S.G. tested negative for drugs on June 24, July 14, and August 14, 2014, but did not appear for drug testing on June 10, July 11, and July 31, 2014.

E.    *The Disposition Hearings*

On July 21, 2014 the juvenile court held the disposition hearing as to Nehemiah, but continued the disposition hearing as to Luna for the Evidence Code section 730 report on Gilberto. The juvenile court removed Nehemiah from S.G. and placed him with V.R. The court terminated jurisdiction and granted sole legal and physical custody to V.R. with

8

monitored visits for S.G. The court also entered a family law "exit order"[2] that required S.G. to participate in mental health counseling, take her psychotropic medication, complete a drug treatment program with random testing, and complete parenting classes.

Prior to the disposition hearing for Luna, the Department's social worker attempted to check on the progress of S.G.'s participation in services at the Be Well Now Institute. The investigation revealed that the provider was no longer in business and the social worker could not verify S.G.'s progress in any of the programs, counseling sessions, or classes.

Gilberto participated in the Evidence Code section 730 psychological evaluation. Gilberto told the psychologist that he was still in a relationship with S.G. and that he wanted the family to reunite. He reported that he lived with his parents who assisted with caring for Luna. Although the psychologist's report did not disclose whether the psychologist asked Gilberto about his behavior at the police station in March, Gilberto denied that he had a history of mental illness or had experienced symptoms of a mood or psychotic disorder. According to the psychologist, Gilberto did not display any abnormal or delusional behavior during the interview. The report concluded, "Review of available records and the current evaluation do not indicate that [Gilberto] meets criteria or is experiencing a mental illness. [Gilberto] appears to be aware of his daughter's needs and appears capable of meeting such needs."

On September 16, 2014 the juvenile court held the disposition hearing as to Luna. The juvenile court removed Luna from S.G. and placed her with Gilberto under Department supervision with family maintenance services. The court stated: "I have questioned the Department's placement on more than one occasion, but we have not had any issues, but based upon the information that has been sustained and the behavior that

---

[2]    Pursuant to section 362.4, when the juvenile court terminates jurisdiction over a dependent minor the court may issue additional orders determining custody or visitation of the child. These orders, referred to as "exit orders," become a part of any existing family law proceeding. (§ 362.4; see *In re Chantal S.* (1996) 13 Cal.4th 196, 202.)

9

you have exhibited and have been dealt with the Department. I note both you and [S.G.] are in court refusing to sign a case plan that I am going to impose, which just continues to show that if you can be obstreperous, you will choose to do so. So the Court finds that given the early age of Luna, the risk continues." The court also ordered unannounced home visits by the Department and conditioned the home-of-parent order on Gilberto residing with the paternal grandparents.

The court ordered services for Gilberto, including parenting classes, counseling to address his dysfunctional relationship with S.G. and co-dependency, and services to address Gilberto's mental health issues. The court also ordered family enhancement services for S.G. consisting of a full drug and alcohol program, random drug testing, a 12-step program, domestic violence and parenting classes, mental health counseling, a psychiatric evaluation, and individual counseling to address case issues.

S.G. and Gilberto filed separate appeals. We consider the appeals together.

## DISCUSSION

A.      *Gilberto's Appeal*

Gilberto argues that the juvenile court erred by not terminating jurisdiction at the disposition hearing because Luna had resided with him without incident for the 10 months since the inception of the dependency proceedings, and therefore there was no need to continue dependency jurisdiction. He also contends that "substantial evidence did not support" the court's disposition order requiring him to reside with his parents and participate in services. Neither contention has merit.

1.      The Juvenile Court Did Not Abuse Its Discretion in Maintaining Jurisdiction over Luna

At the disposition hearing the court may take a number of actions. (See Cal. Rules of Court, rule 5.695.) For example, the court may declare the minor a dependent of the

10

court, remove the child from the custody of the parents, and order the parties to participate in reunification services. (See §§ 361, subds. (a), (c), 361.5 ["the juvenile court shall order the social worker to provide child welfare services"].) The court may also dismiss the petition and terminate jurisdiction. (See § 390; *In re Andrew A.* (2010) 183 Cal.App.4th 1518, 1529.) Or the court may declare dependency, allow the child to remain at home with a parent, and order the parent to participate in services. (See §§ 360, subd. (d), 362, subds. (a), (c).)

We review the juvenile court's decision for abuse of discretion. (See *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300-301 ["[w]e normally review the juvenile court's decision to terminate dependency jurisdiction . . . for abuse of discretion"]; *In re La Shonda B.* (1979) 95 Cal.App.3d 593, 602 [placement decision at disposition phase is reviewed for abuse of discretion].) We will not disturb the order unless the juvenile court has exceeded the bounds of reason. (See *In re Jaden E.* (2014) 229 Cal.App.4th 1277, 1288.) We review the court's factual findings for substantial evidence. (See *In re A.J.* (2013) 214 Cal.App.4th 525, 535 [abuse of discretion standard applies to decision to termination of jurisdiction and placement of the child]; *In re J.K.* (2009) 174 Cal.App.4th 1426, 1433 ["[o]n appeal, the 'substantial evidence' test is the appropriate standard of review for both the jurisdictional and dispositional findings"]; *In re Austin P.* (2004) 118 Cal.App.4th 1124, 1134 [substantial evidence standard of review applies to determination whether supervision should continue].)

The juvenile court found that Luna was a person described by section 300 and ordered Gilberto to retain custody of her subject to the Department's continued supervision. The court required Gilberto to participate in services—counseling and parenting classes—and conditioned custody on Gilberto continuing to live with Luna in his parents' home. The court acted within its legal authority under section 362, subdivisions (a) and (c), to issue such orders.

11

As of the disposition hearing, the circumstances that brought the family to the attention of the Department and subjected the family to the jurisdiction of the dependency court still existed. Gilberto and S.G. continued their relationship and apparently intended to reunite, even though their relationship has a history of dysfunction and co-dependency and they engage in arguments and physical confrontations in front of the children. Neither parent participated in any services to address the issues in their relationship. Gilberto also lacked insight into S.G.'s behaviors and mental state. At the beginning of the dependency proceedings Gilberto confirmed that S.G.'s behavior was violent and unstable, but prior to the jurisdiction hearing he retracted his initial reports of domestic violence and denied that S.G. had ongoing mental health problems.

The record also shows that Gilberto had mental health issues. He engaged in bizarre and irrational behavior at the police department and while speaking with the social worker. This evidence supported the court's order sustaining the section 300 mental health allegations against Gilberto. Significantly, Gilberto does not challenge those jurisdictional findings on appeal. Moreover, the court-ordered psychological evaluation of Gilberto did not resolve all of the questions about Gilberto's mental condition. The Evidence Code section 730 report concluded that Gilberto did not meet the criteria for a mental illness or have symptoms of a mental disorder. These conclusions were sufficient evidence for the court to conclude that, rather than remove Luna from Gilberto's custody, she could remain with him under supervision. Because the Evidence Code section 730 evaluation did not address the March 2014 incidents that led to the section 300 allegations against Gilberto, however, the court found that the report's conclusions did not entirely alleviate the concerns about Gilberto's conduct or eliminate the need for ongoing jurisdiction. Finally, although the evaluator concluded that Gilberto understood and appeared capable of meeting Luna's needs, the evaluator did not opine that Gilberto could take care of his infant daughter without the continuing assistance of his parents and supervision by the Department.

12

Gilberto argues that the court should have awarded him custody and terminated jurisdiction because Luna had been safely in his custody since she was detained in November 2013. It is true that there were no reported incidents of harm to Luna after the court placed her with Gilberto. The circumstances of that placement, however, do not support Gilberto's argument. Gilberto and Luna lived with his parents throughout the proceedings, and his parents assisted with caretaking responsibilities. In addition, Gilberto refused to allow the social worker into the home to check on Luna's condition, and in general he refused to cooperate with the social worker throughout the proceedings. Thus, the evidence shows that Luna was safe in his custody only with proper support and supervision. Viewed in context, the absence of any harmful incidents did not eliminate the risk to Luna and did not undermine the court's decision to continue jurisdiction over the minor, but instead justified continuing jurisdiction and maintaining the conditions of custody. (See *In re Hailey T*. (2012) 212 Cal.App.4th 139, 146 [a "parent need not be dangerous and the child need not have been actually harmed before removal is appropriate"]; *In re A.S*. (2011) 202 Cal.App.4th 237, 247 [in making dispositional orders, "'[t]he court may consider a parent's past conduct as well as present circumstances'" and the "'"focus . . . is on averting harm to the child"'"].)

The cases cited by Gilberto, *In re N.S.* (2002) 97 Cal.App.4th 167 (*N.S.*) and *In re James R., Jr.* (2009) 176 Cal.App.4th 129 (*James R.*), are distinguishable. *N.S.* concerned a challenge to the juvenile court's decision at a six-month review hearing to continue jurisdiction. The court held that the juvenile court should have terminated jurisdiction because the father was in full compliance with his case plan, was cooperative with the social worker, had completed a parenting class, had addressed anger management issues, attended individual counseling, never missed a treatment session, and made good progress with his therapist. (*N.S., supra,* 97 Cal.App.4th at pp. 172-173.) In *James R.* the court found that the evidence did not support a jurisdictional finding that the children were at risk of harm. The family had no prior involvement with the dependency system and had no history of domestic violence. The petition was based on an isolated incident, involving

13

only the mother, who had been hospitalized after consuming alcohol and taking prescription ibuprofen while caring for the children. The father was a non-offending parent, who, even according to the family services agency, provided appropriate care for the children, and the parents voluntarily participated in services even before the agency became involved and stated they were willing to do whatever was asked of them. (*James R., Jr., supra,* 176 Cal.App.4th at pp. 132-134.)

Unlike the parents in *N.S.* and *James R.*, Gilberto and S.G. were uncooperative and slow to address their issues. Gilberto downplayed his conduct and S.G.'s behavior. S.G. had a history of involvement with the dependency system, predating the birth of Luna. Neither parent promptly accepted or participated in the services offered. And, unlike the father in *James R.*, Gilberto is an offending parent.

Finally, we disagree with Gilberto that continued dependency jurisdiction was unnecessary because the dependency court could have achieved the same results by entering an exit order requiring him to participate in services and placing the conditions on custody, by terminating jurisdiction and entering an order under section 362.4. Section 362.4 provides: "When the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child of the juvenile court . . . , the juvenile court on its own motion, may issue . . . an order determining the custody of, or visitation with, the child." Section 362.4 also provides that an exit order determining visitation with the child "shall be filed in the [existing family law proceeding], at the time the juvenile court terminates its jurisdiction over the minor, and shall become a part thereof." (*Ibid.*; see *In re Chantal S., supra,* 13 Cal.4th at p. 202 [dependency court's authorization to issue exit orders includes the power to make custody orders, visitation orders, and orders requiring parents to participate in services and counseling, which are transferred to the family court file and remain in effect until modified or terminated by the family court]; accord, *In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1455-1456 (*Cole Y.*).) Gilberto's argument misses the point. The dependency court here sought not only to ensure Gilberto participated in services and remained in his parents' home with Luna, but also wanted to review the

14

family's progress along the way. An exit order would not have allowed the court to conduct periodic reviews of the case; only continuing jurisdiction would allow the court to achieve that goal.

2. The Juvenile Court Did Not Abuse Its Discretion by Requiring Gilberto To Participate in Services and Live with His Parents

Gilberto also argues that the court erred in requiring him to live with his parents, to take a parenting class, and to participate in individual counseling. Gilberto contends that there is insufficient evidence to support the disposition order because there was no showing that he lacked parenting skills or that Luna was at risk in his custody. He argues that the services ordered were not reasonably necessary to eliminate the conditions that led to the dependency. The evidence, however, fully justified the court's orders.

The juvenile court has broad discretion to issue disposition orders based on the court's determination of what would best serve and protect the child's interests. We will not reverse this determination absent a clear abuse of discretion. (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311-312; *In re Daniel B.* (2014) 231 Cal.App.4th 663, 673.) Under section 362, "[i]f a child is adjudged a dependent child of the court, . . . and the court orders that a parent or guardian shall retain custody of the child subject to the supervision of the social worker, the parents or guardians shall be required to participate in child welfare services or services provided by an appropriate agency designated by the court." (§ 362, subd. (c).) In addition, "[t]he juvenile court may direct any reasonable orders to the parents or guardians of the child who is the subject of any [dependency] proceedings . . . as the court deems necessary and proper to carry out this section," including orders "to participate in a counseling or education program." (§ 362, subd. (d).) The court should order a plan that the court finds appropriate based on the relevant facts and should design the plan to eliminate the conditions that led to the dependency. (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1229; see also § 362, subd. (d).) The court is not limited to the content of the sustained petition when it considers what disposition orders are in the best interests of

15

the child, but instead may consider all of the evidence. (*In re Briana V., supra,* 236 Cal.App.4th at p. 311.)

The evidence in the record supporting the court's order for individual counseling included the dysfunctional dynamic between Gilberto and S.G. As noted, Gilberto initially openly discussed S.G.'s mental health problems and her behavior, and expressed a desire to encourage her to seek treatment. Later, Gilberto denied all of the allegations concerning S.G., distanced himself from his prior statements about her conduct, and refused to cooperate with the Department. Gilberto's actions indicate that Gilberto would benefit from professional counseling focused on co-dependency issues. Individual counseling would also assist Gilberto in dealing with his mental health issues.

The court also reasonably concluded that Gilberto would benefit from parenting classes based on the evidence that Gilberto had acted inappropriately in front of Nehemiah, whom he had parented and treated as a son, when he threatened V.R.'s life. In addition, Gilberto's failure to allow the Department's social worker into the family home to check on Luna suggests that Gilberto's priorities were focused on something other than Luna's best interests. Finally, given Luna's young age and the fact that Gilberto had never lived independently and parented Luna alone supports the court's decision to require Gilberto to live with the paternal grandparents as a condition of Luna's placement in his care.

Gilberto's reliance on *In re Jasmine C.* (2003) 106 Cal.App.4th 177 is misplaced. The court in *Jasmine C.*, reversing an order requiring the mother to attend parenting classes, found that there was no evidence in the record from which a court could reasonably infer that the mother, a non-offending parent, lacked the ability to parent her children. The petition in *Jasmine C.* was based on facts relating only to the father, and there was no evidence that the mother abused the children, failed to protect them, or engaged in any behavior suggesting that she would benefit from parenting education. (*Id.* at pp. 180-182.) In contrast, there is evidence here from which the court could reasonably infer that parenting classes would assist Gilberto.

16

B.    *S.G.'s Appeal*

S.G. argues that there is insufficient evidence to support the juvenile court's disposition order that she participate in drug rehabilitation, testing, and aftercare.  She points out that the court dismissed the section 300 allegations regarding her substance abuse.  S.G. also contends that the court's exit order with respect to Nehemiah was erroneous because the court lacked the authority to condition any modification of the order on her completion of a drug treatment program, and because by setting conditions on modification of the order the juvenile court encroached on the family law court's authority to modify the order.

1.    The Juvenile Court Did Not Abuse Its Discretion in Requiring S.G. To Participate in Drug Rehabilitation Programs and Drug Testing

As discussed, the juvenile court may make "all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child" (§ 362, subd. (a); *In re Briana V., supra,* 236 Cal.App.4th at p. 311), and we review those orders for abuse of discretion.  (See *Briana V.* at pp. 311-312.)  The problem the juvenile court seeks to address need not be described in the section 300 petition, and in fact the juvenile court can order services to address an issue even if the court does not sustain a particular allegation in the section 300 petition regarding that issue.  (See *Briana V.* at p. 311, citing *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006-1008.)

S.G. is correct that at the jurisdiction hearing the court dismissed the allegation in the section 300 petition relating to her substance abuse.  In dismissing this allegation, however, the court also stated, "the Court is going to order drug testing for both parents. And if the tests are missed or dirty, they're going to have to do a full on drug program." S.G. subsequently missed three of the six scheduled drug tests.

At the disposition hearing the court had evidence not only of the missed drug tests, but also S.G.'s unusual and unstable behavior throughout the proceedings, the 2011 referral to the Department stating that S.G. was using drugs in the home in Nehemiah's

17

presence, the report from V.R. that S.G. had a history of abusing "crystal meth" and had been using since 2010, and S.G.'s prior arrest for possession of a controlled substance. Each of these incidents and reports of S.G.'s drug use, standing alone, may not have supported the disposition order. Considered together, however, they are substantial evidence to support the court's disposition orders for a drug treatment and testing program. Indeed, in response to counsel for S.G.'s objection to the order requiring S.G. to participate in drug treatment and testing, the court stated: "I am going to order a full drug treatment program . . . and my concern is that your client has a long history of substance abuse and she also clearly has mental health and emotional issues, and I'm not certain whether her behavior is a result of the drugs or her mental health issues. So out of an abundance of caution, I believe she needs to do a full on drug program . . . . [Y]our client's behavior continues to be erratic in court." The juvenile court did not abuse its discretion in ordering S.G. to participate in drug services.

### 2. The Juvenile Court's Exit Order Was Erroneous

At the disposition hearing concerning Nehemiah, the court terminated dependency jurisdiction and granted sole legal and physical custody to V.R., with monitored visits for S.G. The court stated that it intended to enter a family law exit order requiring S.G. "to participate in mental health counseling. Take all psychotropic meds. She is to do a full on drug program with random testing and after care. She is to enroll in and complete parenting. She is to do individual counseling to address case issues and to take psychotropic meds."

The family law exit order the court subsequently entered contained a stamped notation: "This order shall not be modified unless the Court finds that there has been a significant change of circumstances and the modification is in the best interest of the child pursuant to Welfare & Institutions Code Section 302(d)." The order also included a one-

18

page "addendum" entitled "Reasons For No Or Supervised Visitation."[3]  The addendum indicated that the court was ordering supervised visitation because S.G. had not made substantial progress in court-ordered programs, including "drug abuse treatment program with random testing," parenting classes, individual counseling to address case issues, mental health counseling and assessment, and taking all prescribed psychotropic medication.  The addendum further stated: "Mere completion of a program may be a changed circumstance, but does not constitute grounds for modification, unless the Court also determines that the parent has made substantive progress addressing the problem and such modification would be in the best interests of the child[ren].  The Court should obtain written documentation as proof of completion before entertaining modification requests regarding this order."

The exit order is erroneous.  As discussed, the juvenile court has discretion under section 362.4 to make exit orders that require the parents of a child in a dependency proceeding to participate in counseling, parenting, or education programs related to the custody and visitation orders.  (See *In re Chantal S., supra,* 13 Cal.4th at p. 204.) Section 302, subdivision (d), provides that exit orders "shall not be modified in a proceeding or action described in Section 3021 of the Family Code [regarding dissolution or nullity of a marriage, legal separation, and specified custody issues] unless the court finds that there has been a significant change of circumstances since the juvenile court

---

[3]     The addendum is not an approved Judicial Council form.  According to counsel for the Department, the family law and dependency departments of the Los Angeles Superior Court created the form to provide the family law courts with "information on the reasons for [the dependency court's] custody and visitation orders."  Counsel for the Department also indicates that "the Addendum form is used in virtually every family law exit order issued by the juvenile court in which one parent receives no or supervised visitation.  It is generally the attorney for one of the parents who completes  the Addendum form . . . ."  Counsel for the Department further states that the Judicial Council of California is currently considering a proposal to approve a new form – "JV-206" – that is similar in some ways to the addendum in this case.

19

issued the order and modification of the order is in the best interests of the child." (§ 302, subd. (d).)

In *In re Cole Y.*, *supra*, 233 Cal.App.4th 1444 the court held that a juvenile court issuing an exit order acts beyond its authority when it places conditions on the family court's ability to modify the order that are different from the conditions in section 302, subdivision (d). (*Id.* at p. 1456.) The exit order required the father to complete court-ordered treatment and counseling services in order to modify the exit order. (*Id.* at p. 1451). The court held that, pursuant to section 302, subdivision (d), the decision to modify an exit order is entirely "within the province of the family court." (*Id.* at p. 1456.)

The text at the bottom of the addendum in the exit order in this case, like the language of the order in *Cole Y.*, does not mirror the statutory language of section 302, subdivision (d), nor does it merely describe the services ordered or the reasons for supervised visitation. (Cf. *Cole Y., supra,* 233 Cal.App.4th at p. 1456 [juvenile court acts within its discretion under section 362.4 in ordering services and explaining its rationale for ordering those services].) As in *Cole Y.*, the language of the court's order providing that S.G.'s completion of programs would not constitute grounds to modify the order unless the court also determined that she had made substantial progress in addressing her problems (and that S.G. must provide written documentation of those efforts) differs from the requirements of section 302, subdivision (d). Thus, the language of the addendum improperly constrains the family court's authority to alter the order by dictating what S.G. must show to modify it and by imposing a requirement (making "substantive progress" in addressing her problems) that is not in section 302, subdivision (d). As the court in *Cole Y.* recognized, the law does not allow the juvenile court to place such conditions on the family court's ability to modify the exit order; section 302 reserves this authority for the

family court.  Therefore, the juvenile court must remove this language from the exit order.[4]

## DISPOSITION

The September 16, 2014 disposition order is affirmed, the July 21, 2014 oral disposition is affirmed, and the inconsistent portion of the August 4, 2014 judgment is vacated.  The matter is remanded with directions to conform the judgment to the juvenile court's oral pronouncement, and to strike the language at the bottom of the addendum in the exit order.

SEGAL, J.

We concur:

PERLUSS, P. J.

ZELON, J.

---

[4]     Significantly, the proposed new judicial council form JV-206, currently under consideration by the Judicial Council, contains the following (very different) language: "Completion of one of the programs above *might*, but need not, constitute a significant change of circumstances for purposes of modifying this final custody order.  (Welf. & Inst. Code, § 302(d).)"  (Italics in original.)