Filed 10/6/16  In re S.P. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re S.P., a Person Coming Under the Juvenile Court Law. | |
| | D070065 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. NJ15126) |
| v. | |
| RACHEL P., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Michael Imhoff, Commissioner.  Affirmed.

Monica Vogelmann, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Phillips, Chief Deputy County Counsel, and Dana C. Schoffner, Deputy County Counsel, for Plaintiff and Respondent.

Rachel P. (Mother) appeals the juvenile court's jurisdictional and dispositional orders adjudicating her six-year-old son, S.P., a dependent child under Welfare & Institutions Code section 300, subdivisions (b) and (g)[1] and removing him from her parental custody pursuant to section 361, subdivision (c)(1). We conclude substantial evidence supports the jurisdictional and dispositional orders and affirm the judgment.[2]

FACTUAL AND PROCEDURAL BACKGROUND

In 2015, Mother traveled with S.P. from San Diego County to Chico, California to gather S.P.'s immunization records for school. Mother's boyfriend, Cory W., lived in Chico.

On October 8, 2015, Mother, S.P., and Cory were walking down the street in Chico. Mother separated from the group to go to the drugstore, believing S.P. would follow Cory. Later, a concerned driver saw S.P. crying and walking alone at dusk down a busy street. S.P. led the driver to an apartment unit, and police arrived. Mother was not at the residence and did not respond to the police officer's calls. She arrived at the apartment an hour later, and a social worker came to the scene.

Mother seemed concerned and cooperated with the police and social worker. The social worker explained S.P. would be temporarily detained in a foster home. Mother

---

[1] Further references are to the Welfare and Institutions Code, unless otherwise specified.

[2] The dispositional order is an appealable judgment pursuant to section 395. (*In re S.B.* (2009) 46 Cal.4th 529, 531-532.)

2

agreed to meet with an assigned social worker the next morning. That night, at the foster home, S.P. called himself stupid, said Mother did not love him, and tried to run away.

The next morning, Mother told the social worker the whole incident was a miscommunication, as she thought Cory was watching S.P. The social worker asked Mother if she would participate in drug testing to evaluate whether substance abuse was a concern. Mother admitted she would test positive for marijuana and questioned the relevance of drug testing to the circumstances of S.P.'s detention. The social worker responded Mother had tested positive for methamphetamine, amphetamine, opiates, and THC in August 2015 while hospitalized. Mother agreed to take a drug test that afternoon, but she refused to test once she arrived at the facility. The Butte County Child Services Program (CSP) gave her two more opportunities to test, on October 12 and 13, 2015, but Mother failed to appear.

On October 13, 2015, CSP filed a juvenile dependency petition under section 300, subdivisions (b) and (g). CSP's detention report discussed prior referrals for S.P. dating back to 2012 based on allegations Mother used drugs, exposed S.P. to domestic violence, and inadequately supervised him. The detention report also discussed referrals for S.P.'s older sister dating back to 2003 based on similar allegations. Only some of the prior referrals were investigated and/or found substantiated.

On October 14, 2015, the Butte County juvenile court held detention and jurisdiction hearings. As to detention, the court found Jason P. (Father) was S.P.'s presumed father, made a prima facie finding on the petition, and ordered S.P. placed in out-of-home care.

3

Turning to jurisdiction, Mother submitted on CSP's detention report. The court accepted Mother's interlineated amendments to the petition and found jurisdiction under section 300, subdivisions (b) and (g). The court made a true finding as to the allegations in the amended dependency petition that: (1) S.P. was crying and walking alone at dusk on a busy street on October 8th, and Mother did not appear for over an hour after law enforcement responded (interlineated: Mother claimed she was gone for 18 minutes and had left S.P. with Cory W.); (2) Mother was homeless and did not identify a place to stay (interlineated: Mother claimed to live in San Diego County); (3) Mother had a substance abuse history and did not voluntarily test on October 9, 2015 or October 12, 2015 (interlineated: Mother denied substance abuse); (4) Father had a substance abuse problem, multiple drug-related convictions, and was currently on probation for possessing drug paraphernalia; and (5) Father's whereabouts were unknown.

Noting Mother lived in San Diego County, the juvenile court ordered the case transferred for disposition. However, for the next several months, the case transferred back and forth between San Diego County and Butte County due to court delays and the inability to confirm Mother's residence in San Diego County. During that time, S.P. was hospitalized after he threatened his foster caregiver with a plastic knife. Mother became upset and demanded S.P. be returned to her immediately, claiming CSP had "made the child crazy by taking him away from her," but S.P. was transferred to a group home. S.P. finally arrived in San Diego County in December 2015 and was detained in foster care. San Diego County Superior Court held a transfer hearing on January 22, 2016 and accepted jurisdiction, detained S.P. in foster care, and set a disposition hearing.

4

According to the disposition report filed by the San Diego County Health and Human Services Agency (Agency), Mother visited S.P. three times in January 2016. During the latter two visits, S.P. appeared anxious and disengaged, avoiding eye contact and giving short answers to Mother's questions, but he warmed up as the visits progressed. S.P. wet the bed after two visits with Mother, which raised concerns for the Agency. After Mother missed a visit in late February 2016, S.P. told a social worker, "I am a very bad boy," and "I will never be a good boy, I'm always bad."

S.P. was meeting normal developmental milestones. His teacher stated he tried very hard in class, exhibited good retention, and learned new things quickly. S.P.'s foster parent expressed concern S.P. frequently asked to stay alone at home or in the car, stating Mother would let him do that.

Agency social worker Adrianna Valdez met with Mother twice in January and February and attempted to speak with her over the phone. Mother was agitated during these interactions and repeatedly questioned the relevance of drug testing to the circumstances of S.P.'s detention. She denied needing services or resources and failed to drug test on February 1 and 2, 2016. She was uncooperative and hostile to social workers and walked out without completing her social study. By March, however, Mother was making strides to speak to the Agency in a more cordial manner.

At the contested disposition hearing on March 9, 2016, the juvenile court took judicial notice of the amended petition, detention report, and minute orders from Butte County. The court received into evidence the Agency's disposition and addendum reports. Mother testified she was working, had arranged for child care for S.P., and was

5

willing to participate in services and schedule a substance abuse assessment. Social worker Valdez also testified at trial. Valdez recommended S.P. be placed in foster care because Mother had not visited or called him in a month, and S.P. demonstrated self-harming behaviors after she missed visits. Mother's drug history, failure to drug test, and hostile attitude also influenced Valdez's recommendation for out-of-home placement.

The court made its findings on the record. The court recognized Mother had "a lot of strengths" and had done many things appropriately in raising S.P., who was intelligent, sensitive, and "a really wonderful young man." However, the court expressed concern that S.P. was exposed to domestic violence inflicted against Mother and exhibited a profound lack of self-worth for a six-year-old child. Although the court believed Mother was the "key to helping this child get healthy," it ordered S.P. removed from Mother's custody. (§ 361, subds. (c)(1), (d).) The court adjudged S.P. a dependent child (§ 360, subd. (d)), placed S.P. in foster care, and ordered reunification services for Mother.

Mother appealed the jurisdictional and dispositional orders. S.P.'s appointed counsel joins in the Agency's arguments.

DISCUSSION

On appeal, Mother challenges the sufficiency of the evidence supporting the juvenile court's jurisdictional and dispositional orders. We conclude substantial evidence supports both orders.

6

I.

JURISDICTION

The Butte County juvenile court found jurisdiction under section 300, subdivision (b) based on Mother's failure to supervise S.P. on October 8, 2015 (the incident leading to the petition) and because she "could not demonstrate that she was clean and sober."[3] The court also found jurisdiction based on Father's conduct under section 300, subdivisions (b) and (g), based on his drug use and unknown whereabouts.[4] We conclude substantial evidence supports the court's jurisdictional findings as to Mother's conduct.

A.    *Justiciability*

At the outset, we must consider whether Mother's appeal is moot. Mother does not challenge the assertion of jurisdiction based on Father's conduct, and Father has not filed a separate appeal. Because "it is necessary only for the court to find that one parent's conduct has created circumstances triggering section 300 for the court to assert jurisdiction over the child" (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491), we would affirm the jurisdictional ruling irrespective of Mother's appeal. (*In re M.W.* (2015) 238 Cal.App.4th 1444, 1452.) Nevertheless, we retain jurisdiction to consider Mother's

---

[3]    The amended petition also alleged Mother was homeless, but as the Agency acknowledges on appeal, this ground does not provide an independent basis for dependency jurisdiction. (*In re G.S.R.* (2008) 159 Cal.App.4th 1202, 1212 ["poverty alone, even abject poverty resulting in homelessness, is not a valid basis for assertion of juvenile court jurisdiction"].)

[4]    On appeal, the Agency concedes jurisdiction could not rest on Father's unknown whereabouts alone, noting that "while the whereabouts of the father were unknown, S.P. was not a child who was left without any support or who was without a parent."

7

appeal and do so where, as here, it impacts dispositional orders that are also challenged on appeal. (*Ibid*.; *In re Drake M.* (2012) 211 Cal.App.4th 754, 763.)

B.     *Legal Principles and Standard of Review*

In a dependency proceeding, the juvenile court must first determine whether the minor is subject to the court's jurisdiction. (*In re A.S.* (2011) 202 Cal.App.4th 237, 243-244.) As relevant here, section 300, subdivision (b) provides a basis for dependency jurisdiction if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness" as a result of: (1) a parent's failure or inability to adequately supervise or protect the child; or (2) a parent's inability to provide regular care for the child due to the parent's mental illness, developmental disability, or substance abuse.

To find jurisdiction under section 300, subdivision (b), the juvenile court must find three elements: neglectful conduct by the parent; causation; and serious physical harm or illness, or a substantial risk of such harm or illness, to the child. (*In re A.G.* (2013) 220 Cal.App.4th 675, 683.) "Cases finding a substantial physical danger tend to fall into two factual patterns. One group involves an *identified, specific hazard* in the child's environment—typically an adult with a proven record of abusiveness. [Citations.] The second group involves children of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824.)

The Agency bears the burden of proving the child comes within the court's jurisdiction. (*In re A.S., supra,* 202 Cal.App.4th at p. 244.) " 'The basic question under

8

section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm.' " (*Ibid.*) "While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm." (*In re Rocco M., supra,* 1 Cal.App.4th at p. 824; see *In re Carlos T.* (2009) 174 Cal.App.4th 795, 803.)  Courts evaluate the risk of future physical harm by considering evidence suggesting past physical harm may reoccur.  (*In re A.G., supra,* 220 Cal.App.4th at p. 683.)

"On appeal from an order making jurisdictional findings, we must uphold the court's findings unless, after reviewing the entire record and resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment, we determine there is no substantial evidence to support the findings." (*In re Veronica G.* (2007) 157 Cal.App.4th 179, 185.)  Our inquiry "begins and ends with a determination as to whether or not there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact." (*In re Katrina C*. (1988) 201 Cal.App.3d 540, 547.)  Where more than one inference can reasonably be deduced from the facts, we are without power to substitute our deductions for those of the juvenile court.  (*Ibid.*)

"However, substantial evidence is not synonymous with *any* evidence," and "[a] decision supported by a mere scintilla of evidence need not be affirmed on appeal." (*In re Savannah M*. (2005) 131 Cal.App.4th 1387, 1393.)  " 'The ultimate test is whether it is reasonable for a trier of fact to make the ruling in light of the whole record.' " (*Id*. at p. 1394.)

9

C.     *Substantial Evidence Supports Dependency Jurisdiction based on Mother's Conduct*

Mother submitted on the Agency's amended petition and waived her right to a contested hearing on jurisdiction.  As to Mother, the court based its jurisdictional findings on her failure to supervise S.P. and her substance abuse.  By submitting on CSP's October 2015 detention report, Mother preserved her right to challenge the sufficiency of the evidence supporting jurisdiction.  (*In re N.M.* (2011) 197 Cal.App.4th 159, 167.)  On appeal, we evaluate whether, viewed in a light most favorable to the judgment, CSP's detention report and amended petition sufficiently support jurisdiction.  (*Id.* at p. 168.)

1.     Neglect or Lack of Supervision

The juvenile court could reasonably find Mother inadequately supervised S.P.  Mother concedes she left S.P. unattended on October 8, 2015.  Then five-year-old S.P. was found crying and walking alone at dusk on a busy street.  Mother argues this incident resulted from a simple miscommunication between her and Cory W.  She argues this brief lapse in supervision would hardly provide the basis for temporary removal, much less dependency jurisdiction under section 300, subdivision (b).  Citing *In re Savannah M., supra,* 131 Cal.App.4th 1387, she contends the Agency was required to show evidence beyond mere speculation to suggest a past incident of neglect would reoccur. (*Id.* at p. 1394.)

In response, the Agency points to prior cases of neglect mentioned in the detention report.  In 2012, when S.P. was two years old, CSP found allegations of general neglect substantiated, concluding Mother was mentally unstable and using drugs, leaving S.P.

10

exposed to domestic violence between her and Father.  In July 2015, the Agency received a neglect referral when, after putting S.P. to bed in a women's shelter, Mother stepped out to smoke a cigarette, and S.P. fell from a second story window onto a rooftop awning.  That same month, Mother left S.P. with someone in the shelter; S.P. acted out of control and had to be physically restrained while Mother was away.  In both instances, Mother had followed the shelter's protocol, by having S.P. in bed by 8 p.m. and designating a babysitter.  However, the Agency noted it was not recommended to designate a babysitter she had known only for a few days or to step out before S.P. fell asleep.  The Agency determined the neglect allegations inconclusive and provided preplacement preventative services to Rachel to help her make safer decisions for S.P. in the future.

Based on Mother's pattern of behavior, the juvenile court could reasonably find a substantial risk of future physical harm to S.P. from Mother's chronic failure to supervise.  Despite receiving preplacement preventative services after the incidents in July 2015, S.P. was found walking alone down a busy street after dusk just three months later.  Far from speculative, the circumstances at the time of the jurisdiction hearing in October 2015 indicated S.P. remained at substantial risk of serious physical harm resulting from repeated failures on Mother's part to supervise her young child.  (Cf. *In re J.N.* (2010) 181 Cal.App.4th 1010, 1025 [single incident of drunk driving did not support jurisdiction absent reason beyond mere speculation to believe acts of neglect would reoccur].)  " 'The

court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.)[5]

### 2. Substance Abuse

Likewise, the juvenile court could reasonably find jurisdiction based on Mother's substance abuse. While Mother denied using drugs, the court was free to disbelieve her given her repeated refusals to drug test, which the court could "properly consider[] the equivalent of a positive test result." (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1217 [mother's prejurisdiction failure to test was properly considered a positive result]; see *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1384 [mother's predetention failures to test supported court's finding she was hiding her current drug use].) Indeed, Mother admitted she was too nervous to test on October 9, 2015 because she would test positive for marijuana.

Significantly, just two months before the petition was filed, Mother tested positive for methamphetamine, amphetamine, opiates, and THC. Mother downplays the August 2015 test results, arguing the Agency did not investigate that referral for abuse or neglect. Mother offers no support for the proposition that a decision not to investigate a referral

---

5    The Agency also cites evidence that emerged *after* the jurisdiction hearing, namely, S.P.'s statements to his foster parent in San Diego County that Mother often left him alone in the car or at home. Because there is substantial evidence to support the court's jurisdictional finding without considering this postjurisdiction evidence, we do not address Mother's argument that our review must be limited to evidence before the court at the time of the jurisdiction hearing.

affects the relevance of prior drug test results. There is substantial evidence from which the juvenile court could reasonably conclude Mother was a substance abuser.6

Mother's citation to *Laurie S. v. Superior Court* (1994) 26 Cal.App.4th 195 (*Laurie S.*) to argue she had no obligation to submit to prejurisdiction drug testing is unavailing. *Laurie S.* held a juvenile court may not order a parent to submit to a prejurisdiction psychological evaluation, explaining, "[o]nly after a finding the child is at risk, and assumption of jurisdiction over the child, do a parent's liberty and privacy interests yield to the demonstrated need of child protection." (*Id.* at pp. 197, 202-203.) As the Agency notes, Mother's failure to test was not the sole evidence of her substance abuse. The court could also reasonably rely on Mother's positive test results in August 2015 and her expressed reluctance to test in October 2015 *because* she would test positive for marijuana. Moreover, this case does not involve a prejurisdiction *order* to submit to a psychological evaluation. It involves Mother's failure to submit to voluntary drug testing before the court's detention and jurisdiction hearings. Here, as in *In re Christopher R., supra,* 225 Cal.App.4th at page 1217 and *In re Kadence P., supra,* 241 Cal.App.4th at page 1384, Mother's failure to voluntarily test provides sufficient evidence she was hiding her substance abuse.

---

6    The Agency also points to child welfare referrals dating back to 2003 as to S.P.'s sister that alleged Mother was a substance abuser. However, "[e]vidence of such conduct that may have occurred [12] years before the petition under review was filed cannot support jurisdiction under section 300, subdivision (b), which requires proof of a current risk to the child." (*In re Destiny S.* (2012) 210 Cal.App.4th 999, 1004.)

It is an entirely separate question whether Mother's substance abuse provides a basis for jurisdiction. Mother cites *In re David M.* (2005) 134 Cal.App.4th 822, 830 and argues her alleged drug abuse must be tied to "a specific, defined risk of harm to [S.P.]." Mother is correct that substance abuse *without more* does not suffice for jurisdiction. (*Ibid.*; *In re Drake M., supra,* 211 Cal.App.4th at p. 764.) In *David M.*, evidence the mother abused marijuana and had mental health issues was insufficient where the uncontroverted evidence showed the child was "healthy, well cared for, and loved, and that mother and father were raising him in a clean, tidy home." (*In re David M., supra,* at p. 830.) While the court agreed that harms "*could* come to pass," it found that without more evidence, such harms were speculative. (*Ibid.*; see *In re Destiny S., supra,* 210 Cal.App.4th at p. 1004 [no evidence mother's drug use caused her to neglect her child, who appeared well cared for]; *In re Drake M., supra,* at pp. 767, 769 [no evidence father's medical marijuana use left his child at a specific, defined risk of harm].) By contrast, although the court *In re Rocco M., supra,* 1 Cal.App.4th 814 *upheld* jurisdiction where the mother was a cocaine addict, the court was careful to base jurisdiction on the *effect* of mother's cocaine dependency on the minor's home environment. (*Id.* at pp. 825-826; see § 300.2 ["a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child"].)

Here, unlike in *David M.*, *Destiny S.*, and *Drake M.*, dependency jurisdiction is not premised on Mother's substance abuse *without more*. S.P. came to the Agency's attention in October 2015, after Mother left him unattended on a busy street at dusk. She refused

14

to drug test, stating she would test positive for marijuana. She tested positive for methamphetamine and opiates in August 2015 and was unable to care for S.P. at that time. Although S.P. seemed fine when he visited Mother in the hospital in August, the juvenile court could reasonably find Mother's substance abuse left her incapable of adequately supervising S.P., leaving him at substantial risk of serious physical harm or neglect. Indeed, for a child of such "tender years" as then five-year-old S.P. (*In re Christopher R., supra,* 225 Cal.App.4th at p. 1219), "the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm." (*In re Drake M., supra,* 211 Cal.App.4th at p. 767.) Mother did not adequately rebut that prima facie evidence.

The dependency scheme is designed to avert harm to a child, and the presence of a specific, defined risk of harm to S.P. is sufficient to support the assumption of jurisdiction. (*In re I.J., supra,* 56 Cal.4th at p. 773; *In re David M., supra,* 134 Cal.App.4th at p. 830.) Substantial evidence supports the juvenile court's exercise of jurisdiction based on Mother's conduct.

## II.

## DISPOSITION

Mother also challenges the sufficiency of the evidence to support the juvenile court's dispositional order. At the contested disposition hearing, the San Diego County juvenile court received into evidence the Agency's reports, took judicial notice of prior reports and orders from Butte County, and heard testimony from Mother and social worker Valdez. By clear and convincing evidence, the court determined S.P. should be

15

removed from Mother's custody and placed in out-of-home care. The court found a substantial danger to S.P.'s physical health, safety, protection, or physical or emotional well-being if he were returned to Mother and concluded there were no reasonable means to protect S.P. short of removal. The court also determined the Agency had made reasonable efforts to prevent or eliminate the need for removal. We conclude substantial evidence supports the juvenile court's dispositional findings and order.

A.    *Legal Principles and Standard of Review*

After the court finds jurisdiction, it must conduct a dispositional hearing to decide where the child will live while under the court's supervision. (*In re A.S., supra,* 202 Cal.App.4th at p. 247; § 361, subd. (c).) A parent has a fundamental constitutional right to the care and custody of his or her child. (*In re Henry V.* (2004) 119 Cal.App.4th 522, 525; *In re Precious D.* (2010) 189 Cal.App.4th 1251, 1261.) Out-of-home placement "is a last resort, to be considered only when the child would be in danger if allowed to reside with the parent." (*In re Henry V., supra,* at p. 525.) In accordance with due process, "a child [must] remain in parental custody pending the resolution of dependency proceedings, despite the problems that led the court to take jurisdiction over the child, unless the court is clearly convinced that such a disposition would harm the child." (*Ibid.*)

Before the court issues a removal order, it must find there is a "substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the parent's or

16

guardian's physical custody." (§ 361, subd. (c)(1).) The Agency bears the burden of proving both elements by clear and convincing evidence. (*Ibid.*) "The elevated burden of proof for removal from the home at the disposition stage reflects the Legislature's recognition of the rights of parents to the care, custody and management of their children, and further reflects an effort to keep children in their homes where it is safe to do so." (*In re Hailey T.* (2012) 212 Cal.App.4th 139, 146.)

Reasonable alternatives to removal include allowing a nonoffending parent to retain physical custody, as long as the parent presents an acceptable plan showing he or she will be able to protect the child from future harm. (§ 361, subd. (c)(1)(B).) If a child is removed from parental custody, "[t]he court shall make a determination as to whether reasonable efforts were made to prevent or eliminate the need for removal of the minor from his or her home." (§ 361, subd. (d).) " 'The focus of the statute is on averting harm to the child,' " and the court " 'may consider a parent's past conduct as well as present circumstances.' " (*In re A.S., supra,* 202 Cal.App.4th at p. 247.)

The clear and convincing standard governs the juvenile court but is not the standard for appellate review. (*In re A.R.* (2015) 235 Cal.App.4th 1102, 1115.) On appeal, we evaluate whether the record contains substantial evidence from which the juvenile court could reasonably find that removal was necessary to protect the child. (*In re A.S., supra*, 202 Cal.App.4th at p. 244.)

B.      *Substantial Evidence Supports the Court's Dispositional Findings*

Contrary to Mother's arguments, we conclude substantial evidence supports the court's dispositional findings that: (1) S.P. faced substantial danger if returned home; (2)

17

there were no "reasonable means" to protect S.P.'s physical health other than removing him from Mother's custody; and (3) the Agency made "reasonable efforts" to prevent S.P.'s removal.  (§ 361, subds. (c)(1), (d).)

There was ample evidence S.P. faced a substantial danger to his emotional well-being if he were returned home.  (§ 361, subd. (c)(1).)  S.P.'s mental health was heavily impacted by Mother's behavior.  After being detained on October 8, 2015, S.P. spent the night in foster care, where he "called himself stupid, appeared very angry, [stated] his mother doesn't love him, [and] slept on the floor."  Later that night, he became upset for having opened up to the foster parent and tried to run away.  While detained in foster care in Butte County, S.P. was hospitalized after he threatened to hurt himself and kill the other foster children.[7]  After Mother canceled a visit at the last minute, S.P. displayed anxiety, agitation, and irritability and stated, "I am a very bad boy" and "I will never be a good boy, I'm always bad."  He wet the bed after two of Mother's visits, which was atypical for him.  The social worker reported S.P. regressed quickly when he did not feel well, "really falls apart," "exhibits behaviors that are self-harming" around Mother, and had a "fragile state of mental health."

---

[7]	Mother suggests this evidence shows S.P. faced emotional problems *because* he was removed form Mother.  She likewise points to evidence from prior neglect referrals that S.P. appeared "clean and cared for" and "well bonded" to Mother.  However, in reviewing the sufficiency of the evidence on appeal, we do not attempt to resolve conflicts in the evidence or reweigh evidence; instead, we draw all reasonable inferences in support of the findings and view the record in the light most favorable to the judgment.  (*In re Cole C.* (2009) 174 Cal.App.4th at 900, 916; *In re T.V.* (2013) 217 Cal.App.4th 126, 133.)

The court could reasonably find S.P. could not safely remain in Mother's custody. (§ 361, subd. (c)(1).) Mother repeatedly left S.P. inadequately supervised, including on October 8, 2015 when S.P. was left alone on a busy street. Contrary to Mother's claim, this was not a one-time incident. S.P. told his foster parent Mother often left him alone at home or in the car, recalling one instance when she left him in the car and he was "very thirsty." Butte County CSP investigated Mother in 2012 for neglecting S.P. and found the allegations substantiated.

S.P. was also exposed to domestic violence between Mother and her boyfriend, Cory W. S.P. recalled one time when "Cory was hurting [Mother] and he pushed me when I tried to [make him] stop." Mother admitted S.P. was exposed to a lot of verbal abuse and domestic violence and that he imitated violent and threatening phrases he heard from Cory. Mother left Cory in June 2015 and took domestic violence classes in San Diego County. However, she reconciled and left S.P. in Cory's care four months later, resulting in S.P.'s detainment. Mother continued dating Cory after the juvenile court assumed jurisdiction. "The juvenile court could infer [from Mother's pattern of behavior] these were recurring problems, and nothing in [M]other's situation had changed

to suggest that they would not continue in the future." (*In re John M.* (2012) 212 Cal.App.4th 1117, 1126-1127.)[8]

Mother argues S.P. could have been placed with her, subject to services and supervision. (§ 361, subd. (c)(1)(B).) However, Mother *was* offered preplacement preventative services in July 2015 after S.P. was left unsupervised and fell from a second-story window. Three months later, Mother left S.P. unattended after dark on a busy street. Mother was also offered services in Butte County but chose not to participate. Mother was uncooperative, dishonest, and openly hostile to Agency social workers, and she would only converse about matters she deemed "relevant" to S.P.'s detention. She made no effort to drug test with CSP or the Agency, before or after the court assumed jurisdiction. Significantly, at the time of the disposition hearing, she had not visited or called S.P. for over a month, aside from accompanying S.P. to two dental visits.

Although at trial Mother testified she was willing to participate in services, she had repeatedly denied needing any services or resources, and the social worker expressed concern Mother had yet to complete a substance abuse assessment and walked out during her social study. Mother's expressed willingness to participate in services at the dispositional hearing had to be "considered in conjunction with the fact that she took no

---

8      Mother is correct that past dependency referrals for neglect were not investigated or were found inconclusive. However, "a child does not need to be harmed before being removed from his parents' custody." (*In re Cole C., supra,* 174 Cal.App.4th at p. 918.) Mother concedes she left S.P. unattended on October 8, 2015 with Cory W., who was abusive and a "liar." Mother tested positive in August 2015 for methamphetamine, amphetamine, opiates, and THC. The court could infer S.P. would face substantial danger if returned to her care.

20

independent action to satisfy these goals." (*In re Michael S.* (1987) 188 Cal.App.3d 1448, 1463.) Given her track record, the juvenile court could reasonably find S.P. could not safely be placed in Mother's care in hopes she would comply with court orders or Agency supervision. (*In re John M., supra,* 212 Cal.App.4th at p. 1127; *In re Cole C., supra,* 174 Cal.App.4th at p. 918; cf. *In re Henry V., supra,* 119 Cal.App.4th at p. 529 [mother was "fully cooperative" in services, suggesting reasonable alternatives to removal].)[9]

Indeed, the court could reasonably find there were no reasonable alternatives to removal given Mother's failure to appreciate the severity of the incident that led to dependency jurisdiction. (*In re Maria R.* (2010) 185 Cal.App.4th 48, 70 [in deciding to remove, courts may consider "the parent's response to the conditions that gave rise to juvenile court intervention"], disapproved on another ground in *In re I.J., supra,* 56 Cal.4th 766; *In re N.M., supra,* 197 Cal.App.4th at p. 170 [parent's failure to grasp the danger of the incident leading to jurisdiction supported child's removal].) Mother claimed she was "getting the shit end of the deal," telling social workers she saw no difference between S.P. being left alone on a busy street and a child getting lost in a shopping mall. Considering this evidence with her prior neglect of S.P., the juvenile

---

9       Mother cites *In re Paul E.* (1995) 39 Cal.App.4th 996 to argue noncompliance with a pre-disposition service plan is not *by itself* a sufficient basis for removal. (*Id.* at pp. 1003-1004.) That case does not help Mother. As the court explained in *Paul E.*, the key inquiry is whether there is clear and convincing evidence *the child* faces danger if returned home. (*Ibid.*) Here, the court could reasonably find S.P. faced danger if returned to Mother's custody.

21

court could reasonably determine there were no conditions of supervision that would reasonably guarantee S.P.'s safety in Mother's custody. (§ 361, subd. (c)(1).)

Finally, substantial evidence supports the juvenile court's finding the Agency made "reasonable efforts" to prevent the need for S.P.'s removal. (§ 361, subd. (d).) Mother's hostility to Agency social workers, her failure to call or visit S.P., her failure to participate in drug testing, her disclaiming any need for services, and her failure to appreciate the gravity of events leading to S.P.'s detention amply support that finding. The juvenile court could reasonably determine that despite reasonable efforts by the Agency, S.P. would not be safe in Mother's custody. (*In re Cole C., supra,* 174 Cal.App.4th at p. 918.)[10]

Mother points to unforeseen delays in transferring the case to San Diego County as support for the lack of "reasonable efforts" by the Agency to prevent removal. In October 2015, Butte County heard the case for detention and jurisdiction and ordered the case transferred to San Diego County. San Diego County could not confirm Mother's residence and transferred the case back to Butte County. It was not until January 2016 that San Diego County accepted the transfer. Mother argues the delay caused a

---

[10] Mother cites *In re Ashly F.* (2014) 225 Cal.App.4th 803 (*Ashly F.*) and argues the dispositional order contained only a perfunctory statement as to whether "reasonable efforts" were made or "reasonable means" existed to prevent S.P.'s removal. We find no error. Unlike in *Ashly F.*, the juvenile court explained on the record "the facts on which the decision to remove the minor [was] based," as required. (§ 361, subd. (d); see Cal. Rules of Court, rule 5.695(e).) (Cf. *Ashly F.*, at p. 808.) Although the court arguably could have made more specific findings, unlike in *Ashly F.*, there was not a "reasonable probability" the court would have made such findings in Mother's favor. (*Id.* at p. 811.) Whereas the mother in *Ashly F.* expressed remorse and enrolled in a parenting course (*id.* at p. 810), Mother continued to downplay her actions and denied needing services.

"significant gap in the provision of reasonable efforts to prevent removal."  However, "reasonable efforts, like reasonable services, need only be reasonable under the circumstances, not perfect."  (*In re H.E.* (2008) 169 Cal.App.4th 710, 725.)  Mother refused to drug test and denied needing services in both Butte County and San Diego County, and social workers in both counties found her to be "combative, uncooperative, sporadic, and tangential."  The Agency was not required to "take [Mother] by the hand" if she refused to cooperate.  (*In re Michael S., supra,* 188 Cal.App.3d at p. 1463, fn. 5.)  On the record before us, the juvenile court could reasonably find the Agency had made reasonable efforts to prevent S.P.'s removal, despite procedural delays in transferring the case.  (§ 361, subd. (d).)[11]

---

[11]    The Agency's disposition report references as "reasonable efforts" the attempt by CSP to offer Mother a list of available services in Butte County.  Mother contends such efforts do not suffice given the case transfer to San Diego County.  However, Mother also failed to drug test, submit to a substance abuse assessment, complete a social history, or visit or call S.P. *after* the case was transferred to San Diego County, and she told Agency social workers several times she was not in need of any services or resources.

DISPOSITION

The judgment is affirmed.


NARES, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.