Filed 3/24/23  S.H. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| S.H.,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF FRESNO COUNTY,<br><br>    Respondent;<br><br>FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>    Real Party in Interest. | F085614<br><br>(Super. Ct. No. 20CEJ300241-5)<br><br><br>**OPINION** |

## THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Kimberly J. Nystrom-Geist, Judge.

Juvenile Law Center and Lusine M. Vardanova for Petitioner.

No appearance for Respondent.

Daniel C. Cederborg, County Counsel, and Carlie Flaugher, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]    Before Detjen, Acting P. J., Meehan, J. and Snauffer, J.

Petitioner S.H. (mother) seeks an extraordinary writ from the juvenile court's jurisdictional findings and dispositional orders removing her now seven-month-old daughter, E.H., from her custody, denying her family reunification services and setting a Welfare and Institutions Code section 366.26 hearing.[1] Mother contends there was insufficient evidence she was using drugs to support the court's rulings. She also requests a stay of the section 366.26 hearing set for May 10, 2023. We deny the petition and a stay.

## PROCEDURAL AND FACTUAL SUMMARY

These dependency proceedings were prompted by mother's circumstances at the time of E.H.'s birth in August 2022. Just two months before, her parental rights to her minor children E.M., C.M., A.M. and L.H. (the siblings) were terminated after she failed to reunify with them. Because the facts and circumstances in the siblings' case are germane to the juvenile court's rulings in the instant case, we begin our summary of the case there.

*The Siblings' Case*

In August 2020, then four-year-old E.M., 17-month-old C.M. and six-month-old A.M. (the children) were found in an unsafe and unsanitary home with little to no food. A.M. and C.M. were dirty and wearing soiled diapers. E.M. had on dirty and stained clothes. E.M. said mother " 'smokes drugs.' " He also claimed C.M. got the drugs and smoked them. The children were taken into protective custody and placed with their maternal great aunt, L.R. In May 2021, the juvenile court ordered mother to complete parenting classes, mental health, substance abuse and domestic violence assessments and any recommended treatment, and submit to random drug testing. In June 2021, mother gave birth to L.H. and both tested positive for amphetamine. L.H. was adjudged a dependent of the court and mother was ordered to participate in family reunification

---

[1] Statutory references are to the Welfare and Institutions Code.

2.

services for her also. However, mother did not complete any of her court-ordered services. She missed multiple appointments for a substance abuse assessment and expressed interest in inpatient substance abuse treatment but denied having a substance abuse problem. By the six-month review hearing, she had not completed substance abuse treatment or enrolled in random drug testing. In December 2021, mother's reunification services were terminated and in June 2022 her parental rights were terminated.[2]

*The Referral*

In August 2022, the Fresno County Department of Social Services (department) received a crisis referral that mother had just given birth to E.H. and the medical staff suspected she was under the influence of drugs. Her speech was rapid and she was hostile and uncooperative. Despite her extensive history of substance abuse and child welfare involvement, she denied having either. In a second referral received the same day, the department was informed that mother was using methamphetamine and engaging in domestic violence with Hector B., E.H.'s father. She was homeless and using Rescue the Children as a shelter.

Sarah Martinez, an investigating social worker, went to the hospital to meet with mother. She knocked on the door and entered the room. A woman sitting in a chair holding E.H. told Martinez mother was in the bathroom and she was mother's friend. Hector was asleep in a corner of the room behind the door. When mother exited the bathroom and saw Martinez, she became upset and hostile and demanded to know why she was allowed in her room. Mother declined to speak to Martinez and said she did not have to answer any of her questions. Mother denied the siblings were adopted, accusing Martinez of having inaccurate information and not being a "real CPS social worker." Mother continued yelling that it was none of the department's business and that her situation was different and she did not have to prove that. Martinez explained the

---

[2]     Mother did not appeal the termination order.

department needed to assess mother's living situation and verify the changes. Mother reluctantly stated that she lived at Rescue the Children. She refused to sign a release of information to allow the department to communicate with the staff at Rescue the Children. Mother said she was not enrolled in the substance abuse program at Rescue the Children because she did not use drugs. When Hector spoke up, stating mother did not use drugs, Martinez asked if Hector was E.H.'s father. Mother yelled, " 'Don't answer that! Don't tell her anything!' " Martinez left mother's room while mother continued to yell at her.

The following day, social worker Araceli Marquez arrived at the hospital, knocked on mother's door and entered. She observed a car seat and some clothing. Mother did not want to disclose the name of E.H.'s father. She denied a history of domestic violence and said her children were previously removed because she was using drugs. When Marquez asked mother which drugs she used mother claimed not to know. She did not think it was necessary for her to drug test for the department.

On August 16, 2022, Margaret Castillo at Rescue the Children told Marquez mother had been at the shelter since May 28, 2022. She drug tested upon entry with negative results. She had not tested since. Mother was not in a program but could remain in the shelter if she was working on herself, which she was doing as well as taking a parenting class. Castillo said the facility had all the baby supplies and would allow mother to get back on her feet. She was upset mother had not been honest with the social workers. At a team decision making meeting later that day, mother said the siblings were removed while she was living on a shared property and the yard was not suitable for the siblings. L.H. was removed because mother relapsed and used methamphetamine just before L.H. was born. She said it was a big mistake. One of the social workers pointed out that reunification services were ordered in July 2021 and mother did not participate. She said she did not complete services in that case because she lacked transportation but had moved to Fresno to be closer to her service providers. Castillo said mother had met

4.

the 90-day limit to stay in the shelter but they were not going to make her leave. She said mother was allowed to leave during the day and her whereabouts were unknown for a while. Mother also said there was a domestic violence incident in November 2021 from which she received multiple contusions and a black eyes. Asked why Hector was in her hospital room, she said he heard about E.H.'s birth through a friend. Mother began deflecting and stated she could not make up for yesterday but could make up for tomorrow. Marquez confirmed that a criminal protective order was issued in March 2022 protecting mother from Hector. The protective order expired in March 2025 and did not include peaceful contact.

*The Detention*

The department took E.H. into protective custody and filed a dependency petition on her behalf, alleging under section 300, subdivision (b)(1) that mother did not have any baby supplies or stable housing when she gave birth to E.H. and exhibited aggressive and paranoid behavior, including asking the same questions repeatedly, yelling and having rapid speech patterns. It further alleged mother continued to use controlled substances despite receiving family reunification services, including substance abuse treatment and random drug testing. Under section 300, subdivision (j), the petition alleged mother failed to provide the siblings adequate care, supervision and protection because of her ongoing substance abuse problem, citing the circumstances of their dependency case, and therefore placed E.H. at a substantial risk of suffering the same abuse and neglect. Hector H. was identified as E.H.'s alleged father on the petition. E.H. was placed with her siblings in L.R.'s home.

On August 22, 2022, the juvenile court took judicial notice of the siblings' case, ordered E.H. detained, and offered mother substance abuse, mental health and domestic violence assessments and any recommended treatment and random drug testing. The court ordered twice weekly one-hour supervised visitation for mother and set the jurisdiction and disposition hearing (combined hearing) for October 12, 2022. On August

5.

29, 2022, the department received a copy of E.H.'s umbilical cord test, which revealed negative results for all substances.

*The Contested Combined Hearing*

The juvenile court continued the combined hearing and conducted it as a contested hearing on January 12, 2023. Meanwhile, on August 31, 2022, mother completed a substance use disorders orientation and was referred for a substance abuse assessment with Delta Care. On September 6, she completed a substance abuse assessment with counselor Mark Blanton at Delta Care and reported she was in the pretreatment phase with Rescue the Children and had not used since November 2021 and had no desire or urge to use. Blanton determined, based on mother's assessment, that she did not require treatment.

In its report for the combined hearing, the department recommended the juvenile court deny mother reunification services under section 361.5, subdivision (b)(10) and (11) because of her failure to treat her substance abuse. Although she participated in random drug testing with negative results from August 29 to October 3, 2022, and was living in Rescue the Children, a controlled sober living environment, she had not demonstrated her ability to maintain her sobriety.

Also in the months preceding the contested hearing, Hector underwent paternity testing and the juvenile court deemed him to be E.H.'s biological father. The department recommended the court deny Hector reunification services under section 361.5, subdivision (a).

Social worker Stefania Rodriguez testified mother participated in two of the 26 required classes for the domestic violence program and was participating in a 52-week child abuse intervention program. According to her service providers, she engaged and interacted in her sessions. Mother attended Alcoholics Anonymous (AA) meetings when she had the opportunity and regularly and consistently visited E.H. twice a week for one hour. Mother was discharged from Rescue the Children in October 2022 because she

was involved in a verbal altercation with another client that became physical. According to the case manager, mother was serving lunch and the client arrived late. The client thought mother told her she could not eat because she was late. The client got upset and the altercation ensued. Rodriguez did not know who attacked whom.

Dr. Oliver Ezenwugo, director of the Phoenix Program, testified mother participated in domestic violence, anger management, child abuse intervention and victim's mentality classes through his program. Mother regularly attended and was doing well. She participated without having to be prompted and was not aggressive or disruptive. He believed she was benefitting from her classes based on her progress reports and the input from other service providers.

Mother testified she had been clean and sober for over a year but did not know the exact date of her sobriety. She began residing at Rescue the Children in March 2022. She tested a couple of times there and the results were negative. She had more than enough supplies for E.H. when she was born. She had a car seat and a diaper bag in her hospital room. She moved from the shelter side of Rescue the Children in August 2022 to the treatment side. She was discharged from the program in October 2022 after the incident with the late client. The woman had been warned twice that she could not come late or she was not going to be served her meal. When she came in late again, mother told her they would serve her and her children that time but would not serve them if they were late the next day. The woman thought she and her children were not going to be fed then and became angry. Mother repeated herself and the woman became aggressive, threw her tray at mother and left. Mother was not physically aggressive but was loud and used profanity. She regretted not walking away from the situation instead of arguing. After leaving Rescue the Children, she went to Naomi's House to avoid homelessness. She participated in group therapy once a week, was enrolled in one-on-one therapy, attended AA meetings from Friday to Tuesday, and was enrolled in Narcotics Anonymous (NA) meetings. She was learning how her behavior affected her children.

7.

Since she last participated in reunification services, she was more "clear minded" and maintained her sobriety.

*The Juvenile Court's Ruling*

The juvenile court sustained the jurisdictional allegations and denied the parents reunification services as recommended. In ruling, the court found sufficient evidence mother had an ongoing substance abuse problem based on the totality of the circumstances. Specifically, the court credited the medical staff's suspicion mother was using drugs based on her erratic behavior, rapid speech and denial of past drug use. The court noted that mother had some drug tests after E.H.'s birth that were negative and that her umbilical cord was negative. However, the court lacked any medical testimony that would allow it to interpret what the negative umbilical cord meant, stating, "I have no way of knowing if that means that the mother would not have used for the duration of the pregnancy or if the mother would not have used for two days prior to birth, so there is no perspective offered as to that meaning." As to the clean drug tests, the court stated it had no way of knowing what that meant other than that mother tested clean on those particular days. The court did not find mother credible regarding her sobriety date. In her assessment with Delta Care, she said she had not used since November 2021. At a different point, she said she relapsed right before L.H. was born in June 2021 and did not use any other time.

Regarding disposition as to mother, the juvenile court ordered E.H. removed from her custody and denied her reunification services under section 361.5, subdivision (b)(10) and (11) based on the outcome of the siblings' case and mother's failure to make reasonable efforts to treat the problems necessitating their removal. The court stated reasonable efforts would have included participating in substance abuse treatment and some form of domestic violence services and utilizing the protection of the criminal protective order, instead of allowing Hector to be present in her hospital room. The court noted that mother completed seven sessions of a child abuse prevention program and

8.

anger management program but found seven sessions minimal and less than a reasonable effort in light of her significant problems.

## DISCUSSION

On appeal, we review jurisdictional and dispositional findings and orders under the substantial evidence standard of review. (*In re A.S.* (2011) 202 Cal.App.4th 237, 244.) Substantial evidence exists when the evidence is "reasonable in nature, credible, and of solid value," so that "a reasonable mind would accept [it] as adequate to support [the] conclusion." (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.) Under this standard of review, we consider the record as a whole, in a light most favorable to the juvenile court's findings and conclusions, and we defer to the juvenile court on any issues of credibility of the evidence. (*In re Tania S.* (1992) 5 Cal.App.4th 728, 733−734.) The existence of evidence of some support for a contrary finding will not defeat the finding. (*In re Manuel G.* (1997) 16 Cal.4th 805, 823.) Moreover, "[w]hen the sufficiency of the evidence to support a finding or order is challenged on appeal, even where the standard of proof in the trial court is clear and convincing evidence, the reviewing court must determine if there is any substantial evidence—that is, evidence which is reasonable, credible and of solid value—to support the conclusion of the trier of fact." (*In re Jasmine C.* (1999) 70 Cal.App.4th 71, 75.) However, we bear in mind that the juvenile court was required to make the findings on the heightened clear and convincing evidence standard of proof. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995−996.)

I.     *Substantial Evidence Supports the Juvenile Court's Jurisdictional Findings*

Mother contends there was insufficient evidence at the time of the jurisdictional hearing to find that she had a substance abuse problem that negatively affected her ability to provide E.H. adequate care, supervision and protection. On the contrary, she argues, the evidence reflects she gave birth to a healthy baby whose umbilical cord tested negative, she had been clean and sober since May 2022, consistently tested negative for

the six months between detention and jurisdiction and did not meet the medical necessity for drug treatment. We disagree the evidence was insufficient.

A juvenile court may exercise its dependency jurisdiction over a child if it finds, by a preponderance of the evidence, the actions of a parent bring the child within one of the statutory definitions set forth in section 300 and its subdivisions. (*In re Joshua G.* (2005) 129 Cal.App,.4th 189, 202.) Here, the juvenile court adjudged E.H a minor described under section 300, subdivisions (b)(1) and (j). Subdivision (b)(1) applies, as relevant here, where the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of …: [¶] [t]he failure or inability of the child's parent … to adequately supervise or protect the child[ or by] [¶] … [¶] [t]he inability of the parent … to provide regular care for the child due to the parent's … substance abuse." (§ 300, subd. (b)(1).) Subdivision (j) applies when "[t]he child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i) and there is a substantial risk that the child will be abused or neglected as defined in those subdivisions." (§ 300, subd. (j).)

With respect to substance abuse, the petition alleged under section 300, subdivision (b)(1) that mother continued to use controlled substances as evidenced by her aggressive and paranoid behavior and rapid speech at the hospital on or around August 14, 2022. The petition further alleged under subdivision (j) that mother was using drugs and neglecting the siblings in August 2020, tested positive for amphetamine in June 2021 while giving birth to L.H. and failed to complete court-ordered drug treatment.[3]

---

[3] Although we could affirm the juvenile court's jurisdictional finding based on substantial evidence to support the section 300, subdivision (b)(1) allegation alone, we also address the subdivision (j) allegation regarding mother's drug use and neglect of the siblings as that evidence is pertinent to its true finding under section 300, subdivision (b)(1).

Mother contends her behavior alone at the time of E.H.'s birth was insufficient to find jurisdiction in the absence of objective indicia of ongoing drug use such as positive test results or the presence of drugs in the umbilical cord blood. What she fails to acknowledge, however, is the probative value of her substance abuse history and denial to the medical staff and the drug abuse counselor that she had a drug problem. "Although 'the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm' [citation], the court may nevertheless consider past events when determining whether a child presently needs the juvenile court's protection. [Citations.] A parent's past conduct is a good predictor of future behavior. [Citation.] 'Facts supporting allegations that a child is one described by section 300 are cumulative.' [Citation.] Thus, the court 'must consider all the circumstances affecting the child, wherever they occur.' " (*In re T.V.* (2013) 217 Cal.App.4th 126, 133.) Further, a parent's denial of wrongdoing or failure to recognize the negative impact of her conduct is also a relevant consideration in the court's determination of risk under section 300. (*In re Tania S.*, *supra*, 5 Cal.App.4th at p. 735, fn. 4; see also *In re A.F.* (2016) 3 Cal.App.5th 283, 293 [" '[D]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision.' "].)

Here, mother's history of drug use is sufficiently longstanding that it resulted in the neglect of the siblings and ultimately the termination of her parental rights. Just two months after that occurred, she gave birth to E.H. and was exhibiting behavior which the medical staff deemed consistent with drug use. At that same time, mother flatly denied having any drug problems even though her parental rights had just been terminated in large part for that reason. Further, she could not pinpoint a sobriety date; the best she could estimate was a month and year and even that was nebulous. For example, she told the counselor at Delta Care during her assessment in September 2022 that she had been clean and sober since November 2021, yet testified in January 2023 that

she had been clean and sober for over a year but did not know the exact date or offer a year and a month. What is clear from the record despite the lack of positive test results are the facts that mother's drug use was a significant factor in the loss of custody and parental rights in the siblings' case, she had 16 months in which to complete drug treatment before her reunification services were terminated but did not, and just two months after her parental rights were terminated, she exhibited behavior consistent with drug use, yet denied ever using drugs. If mother was under the influence of drugs around the time of E.H.'s birth, as was suspected, then she mispresented to the drug counselor in September 2022 that she had been clean and sober for over a year and thwarted her own chances of receiving drug treatment by not honestly reporting her drug use. On that evidence, the juvenile court could find that mother's untreated substance abuse problem posed a substantial risk of harm to E.H. at the time of the combined hearing. Consequently, we affirm its jurisdictional findings under section 300, subdivisions (b)(1) and (j).

II.    *Substantial Evidence Supports the Juvenile Court's Removal Order*

Mother next contends the department's report was void of any meaningful discussion of whether reasonable efforts were made to protect E.H. without removing her from her custody, including following up on the services offered to her at the detention hearing. For the reasons explained below, we conclude substantial evidence also supports the juvenile court's removal order.

The juvenile court may not remove a child from the physical custody of a parent with whom the child resided at the time a dependency petition was initiated unless, as pertinent here, the court finds by clear and convincing evidence "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the [child] if [the child] were returned home, and there are no reasonable means by which the [child's] physical health can be protected without removing the [child] from [the parent's physical custody.]" (§ 361, subd. (c)(1).) The court must

12.

"make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the [child] from his or her home" and "shall state the facts on which the decision to remove the [child] is based." (§ 361, subd. (e).) In addition, the department's report must include "[a] discussion of the reasonable efforts made to prevent or eliminate removal." (Cal. Rules of Court, rule 5.690(a)(1)(B)(i).)

Mother does not contend the evidence was insufficient to support a finding E.H. would be at a substantial risk of harm if placed in her custody. Instead, she contends there was insufficient evidence to support the other required finding under the statute, i.e., that there were no reasonable means to protect E.H. without removing her. To that end, mother does not identify an alternative that she contends would have prevented E.H.'s removal. She simply claims the department's report is devoid of any evidence that it considered any alternatives. We disagree. The department considered the option of placing E.H. with mother at Rescue the Children. Its discussion of the matter is contained in its detention report. On August 16, 2022, social worker Castillo and mother met to discuss the department's concerns mother was still using drugs and placing herself at risk for domestic violence. Castillo stated mother was free to leave Rescue the Children during the day and her whereabouts were unknown for a period of time. The social workers pointed out she was still in a relationship with Hector and had not made progress in any of the services ordered in the siblings' case. Consequently, the social workers decided it was unsafe and premature to place E.H. in mother's custody, thus eliminating Rescue the Children as a viable option.

To the extent mother contends the department could have prevented E.H.'s removal by following up on the services offered to her at the detention hearing, the record reflects that the department did so. As documented in its report for the combined hearing, the department mailed mother an individualized service letter on August 22, 2022, listing the services the department was ordered to offer her and the dates she was to attend and the location and/or telephone number of the service provider. In the case of

13.

mental health services, the letter informed mother that the service provider would contact her. According to the same report, mother completed the assessments and enrolled in random drug testing. We thus conclude substantial evidence supports the juvenile court's removal order.

III.     *Substantial Evidence Supports the Juvenile Court's Denial of Services Orders*

Mother contends the juvenile court erred in denying her reunification services under section 361.5, subdivision (b)(10) and (11) because there is insufficient evidence to support a finding, required under both subdivisions, that she failed to make reasonable efforts to address the problems that led to the removal of E.H.'s siblings.[4]  We disagree.

"As a general rule, when a child is removed from parental custody under dependency laws, the juvenile court is required to provide reunification services to 'the child and the child's mother and statutorily presumed father.' " (*Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1120, quoting § 361.5, subd. (a).)  However, reunification services need not be provided under section 361.5, subdivision (b)(10) when the court finds by clear and convincing evidence "[t]hat the court ordered termination of reunification services for any siblings or half siblings of the child because the parent … failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent … and that parent … has not subsequently made reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent …."  Similarly, reunification services need not be provided under section 361.5, subdivision (b)(11) when the court finds by clear and convincing evidence "[t]hat the parental rights of a parent over any sibling or half sibling of the child had been

---

**4**     Although we may affirm the juvenile court's denial of services order if substantial evidence supports one of the subdivisions under section 361.5, section (b) (*In re Brian M.* (2000) 82 Cal.App.4th 1398, 1401), we review subdivision (b)(10) *and* (11) since the issue is the same for each subpart, i.e., whether mother made reasonable efforts to address her drug abuse subsequent to the removal of the siblings.

permanently severed, and … this parent has not subsequently made reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from the parent ….”

“The ‘no reasonable effort’ clause provides a means of mitigating a harsh rule that would allow the court to deny services based only upon the parent’s prior failure to reunify with the child’s sibling ‘when the parent had in fact, in the meantime, worked toward correcting the underlying problems.’ ” (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 97.) The focus on whether the parent has “ ‘subsequently’ ” made reasonable efforts to treat problems that led to the removal of the sibling “refers to reasonable efforts made since the removal of the sibling,” and not to reasonable efforts made since reunification services or parental rights were terminated as to the sibling. (*Id.* at p. 98.)

“Moreover, not every ‘effort by a parent, even if clearly genuine, to address the problems leading to removal will constitute a reasonable effort and as such render these provisions inapplicable. It is certainly appropriate for the juvenile court to consider the duration, extent and context of the parent’s efforts, as well as any other factors relating to the quality and quantity of those efforts, when evaluating the effort for reasonableness. And while the degree of progress is not the focus of the inquiry, a parent’s progress, or lack of progress, both in the short and long term, may be considered to the extent it bears on the reasonableness of the effort made.’ ” (*Jennifer S. v. Superior Court*, *supra*, 15 Cal.App.5th at p. 1121, italics omitted.)

Here, mother asserts she made reasonable efforts to treat the problems requiring the siblings’ removal as evidenced by her negative drug test results, attendance at AA and NA meetings, participation in mental health and child abuse programs and finding stable housing albeit it in a shelter. The fact that she never completed drug treatment, she contends, is immaterial since she was able to overcome her drug problem without it. The record, however, does not support mother’s contention.

15.

The siblings were removed from mother's custody in August 2020 because she was using methamphetamine and neglecting them. Though she was provided services to reunify with them, including drug treatment, she did not complete treatment and nearly a year later, in June 2021, she gave birth to a fourth child who tested positive for amphetamine. Again, she was provided drug treatment, which she did not complete. In December 2021, her reunification services were terminated and in June 2022, nearly two years after the siblings were removed, mother's parental rights were terminated. At no time up to that point had she completed drug treatment. Two months later, she gave birth to E.H. and behaved in a way that caused the medical professionals to suspect she was using drugs. At the same time, someone reported mother was homeless, using methamphetamine and engaging in domestic violence with Hector. This was approximately nine months after Hector assaulted her, leaving multiple contusions and black eyes. Despite an order restraining him, mother allowed Hector in her hospital room. By the hearing in January 2023, mother had participated in approximately six weeks (August 29 to October 3, 2022) of random drug testing, attended group therapy and some AA meetings, recently enrolled in NA meetings and one-on-one therapy and completed seven sessions of child abuse and anger management. However, nearly three years after the siblings' removal, she had yet to complete drug treatment, demonstrate that she was in a recovery program or that she was participating in domestic violence services. On that evidence, the juvenile court could find that mother's efforts subsequent to the siblings' removal to treat her drug abuse and domestic violence were not reasonable.

We conclude substantial evidence supports the juvenile court's orders denying mother reunification services under section 361.5, subdivision (b)(10) and (11) and setting a section 366.26 hearing.

**DISPOSITION**

The petition for extraordinary writ and request for a stay of the section 366.26 hearing are denied. This court's opinion is final forthwith as to this court pursuant to California Rules of Court, rule 8.490(b)(2)(A).